

**FILED**

JAN 2 4 2022

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

STATE OF WEST VIRGINIA

COUNTY OF MONONGALIA, TO-WIT:

*1:22 cv 7*

     I, Jean Friend, Clerk of the Circuit Court of Monongalia County, State

aforesaid, hereby certify that the foregoing are copies of the original papers

filed, and a complete record of the proceedings had in the within action of

**KEVIN M. PIERSON AND BLUE DUCK RESOURCES, LLC, FKA**

**KEVIN PIERSON, LLC**

vs.      Civil Action No. 21-C-365

**BRYSON KUBA AND BRYSON KUBA, LP**

lately pending in said Circuit Court.

     Given under my hand and the seal of said Circuit Court on this 19th

day of January, 2022.

                        Jean Friend

                Circuit Clerk of Monongalia Co., WV

CASE#: **21-C-365**   Sub Code:

Date Opened: 12/21/2021
Date Printed: 01/19/2022

JUDGE: SUSAN B. TUCKER

vs

Plaintiff: **KEVIN M. PIERSON**

Defendant: **BRYSON KUBA**

Pro Attorney: PAUL R. CRANSTON

Def Attorney:

| Page | Date | Memorandum | Account# | Earned | Collected | Balance |
|------|------|-----------|----------|--------|-----------|---------|
| 1 | 12/21/2021 | Complaint Filed | | 200.00 | 200.00 | .00 |
| 2 | 12/21/2021 | Additional clerk/filing fee | | 40.00 | 40.00 | .00 |
| 3 | 12/21/2021 | Additional filing fee for 2 pls. | | 200.00 | 200.00 | .00 |
| 4 | 12/27/2021 | S/S accepted service on behalf of Bryson Kuba, & Bryson Kuba LP  on | | .00 | .00 | .00 |
| 5 | 12/27/2021 |   12/21/21 | | .00 | .00 | .00 |
| 6 | 01/19/2022 | Notice of Filing of Notice of Removal | | .00 | .00 | .00 |
| 7 | 01/19/2022 | REMOVED TO FEDERAL COURT | | .00 | .00 | .00 |
| | | **Totals** | | **440.00** | **440.00** | **.00** |

**IN THE CIRCUIT COURT OF** _____ **MONONGALIA** _____ **COUNTY, WEST VIRGINIA**

## CIVIL CASE INFORMATION STATEMENT
### (Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

| | |
|---|---|
| **Plaintiff(s)** | **Case No.** 21-C-365 |
| KEVIN M. PIERSON | **Judge:** SBT |
| and BLUE DUCK RESOURCES, LLC | **Plantiff's Phone:** (304) 296-3500 |
| f/k/a Kevin Pierson, LLC | |
| **vs.** | |
| **Defendant(s)** | **Days to Answer** | **Type of Service** |
| BRYSON KUBA | 30 | WV Sec. of State, pursuant to W.Va. Code §56-3-31 |
| Name | |
| 133 Lakeside Drive | **Defendant's Phone:** taken by atty to S/S |
| Street Address | |
| Malakoff, TX 75148 | |
| City, State, Zip Code | |

**II. TYPE OF CASE:**

- [✓] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [✓] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): 12 / 2022

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [✓] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

FILED

DEC 21 2021

JEAN FRIEND, CLERK

| | |
|---|---|
| Attorney Name: Paul R. Cranston | Representing: |
| Firm: Cranston & Edwards, PLLC | [✓] Plaintiff    [ ] Defendant |
| Address: 1200 Dorsey Ave., Suite II, Morgantown, WV 26501 | [ ] Cross-Defendant [ ] Cross-Complainant |
| Telephone: (304) 296-3500 | [ ] 3rd-Party Plaintiff [ ] 3rd-Party Defendant |

[ ] **Proceeding Without an Attorney**

Original and 4 copies of complaint enclosed/attached.

Dated: 12 / 21 / 2021    Signature: _____

**SCA-C-100:** Civil Case Information Statement (Other than Domestic Relations)    Revision Date: 4/2020

**Plaintiff:** **KEVIN M. PIERSON** _, et al_    **Case Number:** _____
**vs.**
**Defendant: BRYSON KUBA** _, et al_

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

BRYSON KUBA, LP
Defendant's Name                          Defendant's Phone: _____

133 Lakeside Drive
Street Address                            Days to Answer: _____30_____

Malakoff, TX 75148
City, State, Zip Code                     Type of Service: WV Sec. of State, pursuant to W.Va. Code §56-3-31

                                          _atty to talk to S/S_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          Defendant's Phone: _____
Defendant's Name

                                          Days to Answer: _____
Street Address

                                          Type of Service: _____
City, State, Zip Code
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          Defendant's Phone: _____
Defendant's Name

                                          Days to Answer: _____
Street Address

                                          Type of Service: _____
City, State, Zip Code
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          Defendant's Phone: _____
Defendant's Name

                                          Days to Answer: _____
Street Address

                                          Type of Service: _____
City, State, Zip Code
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          Defendant's Phone: _____
Defendant's Name

                                          Days to Answer: _____
Street Address

                                          Type of Service: _____
City, State, Zip Code
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          Defendant's Phone: _____
Defendant's Name

                                          Days to Answer: _____
Street Address

                                          Type of Service: _____
City, State, Zip Code
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          Defendant's Phone: _____
Defendant's Name

                                          Days to Answer: _____
Street Address

                                          Type of Service: _____
City, State, Zip Code
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**KEVIN M. PIERSON, a West
Virginia resident, and BLUE
DUCK RESOURCES, LLC, f/k/a
Kevin Pierson, LLC, a Texas
limited liability company,**

     **Plaintiffs,**

**v.**                                                Civil Action No. *21-C-365*

**BRYSON KUBA, a Texas resident,
and BRYSON KUBA, LP, a Texas
limited partnership,**

     **Defendants.**

## COMPLAINT

For their Complaint against the Defendants, Bryson Kuba ("Kuba") and Bryson Kuba, LP (the "Company", and collectively with Kuba, the "Defendants"), the Plaintiffs, Kevin M. Pierson ("Pierson") and Blue Duck Resources, LLC, f/k/a Kevin Pierson, LLC ("Pierson LLC", and collectively with Pierson, the "Plaintiffs"), by counsel, aver as follows:

### The Parties

1.     Pierson is a resident of Morgantown, West Virginia.

2.     The Pierson LLC is a Texas limited liability company with its principal place of business in Morgantown, West Virginia.

3.     Pierson is now and has always been the sole member of the Pierson LLC.

4.     Kuba is a resident of Malakoff, Texas.

5.     Kuba owns property in Monongalia County, West Virginia at 143 S. Pierpont Road, Morgantown, West Virginia.

**F I L E D**

DEC 2 1 ' J21

JEAN FRIEND, CLERK

6.      The Company is a Texas limited partnership. Since 2009, the Company has maintained an office in Morgantown, West Virginia, and it has transacted business in West Virginia, including Monongalia County, on a regular basis.

### Jurisdiction

7.      West Virginia's long-arm statute, West Virginia Code § 56-3-33(a) (the "Long-Arm Statute"), confers *in personam* jurisdiction on a non-resident who has an interest in, uses or possesses real property in West Virginia. *See* W. Va. Code § 56-3-33(a)(6).

8.      This Court has *in personam* jurisdiction over Kuba under the Long-Arm Statute because Kuba owns an interest in real property in West Virginia. Specifically, Kuba owns an interest in real property located at 143 S. Pierpont Road, Morgantown, West Virginia.

9.      The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who has transacted business in West Virginia. *See* W. Va. Code § 56-3-33(a)(1).

10.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants have transacted business in West Virginia.

11.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who regularly does or solicits business in West Virginia and has caused tortious injury in West Virginia by an act or omission outside the state. *See* W. Va. Code § 56-3-33(a)(4).

12.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants regularly do or solicit business in West Virginia and have caused tortious injury in West Virginia by an act or omission outside the state.

13.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who derives substantial revenue from services rendered in West Virginia and has caused tortious injury in West Virginia by an act or omission outside the state. *Id.*

2

14.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants have derived substantial revenue from services rendered in West Virginia and have caused tortious injury in West Virginia by an act or omission outside the state.

## Venue

15.     Pursuant to West Virginia Code § 56-1-1(a)(1), venue is proper in the Circuit Court of Monongalia County, West Virginia, because the vast majority of Defendants' promises, misrepresentations and lies about Plaintiffs' ownership in the Company were made to Plaintiffs in Monongalia County and the causes of action against Defendant arose here.

## Factual Allegations

16.     This is a case about Defendants' fraud, deceit, and broken promises.

17.     The Company is a professional land management company with experience in oil and gas project management and lease acquisition. Kuba is the Company's founder, and HE exercises a large degree of dominion and control over the Company.

18.     In 2007, Kuba recruited Pierson to work for the Company in its Fort Worth, Texas office as a contract field landman.

19.     Pierson agreed to work for the Company on a contract basis, and he established Kevin Pierson, LLC[1] to be the contracting party with the Company.

20.     In 2009, the Company secured a large oil and gas project from XTO Energy in the Appalachian Basin, and Kuba convinced Pierson to move from Texas to West Virginia to manage the project.

21.     At Kuba's request, Pierson moved to West Virginia in late 2009.

---

[1] Kevin Pierson, LLC changed its name to Blue Duck Resources, LLC on June 15, 2021.

22.    In December 2011, Kuba purchased a large home at 143 S. Pierpont Road, Morgantown, West Virginia, and the Company opened its West Virginia office there.

23.    Defendants repeatedly promised Pierson that in exchange for Pierson's hard work and success at the Company, Defendants would ensure that Pierson would own "equity" (i.e., an ownership interest) in the Company.

24.    As a direct result of Pierson's efforts, the Company's West Virginia office was a great success. In fact, as a direct result of Pierson's efforts in West Virginia, Defendants literally made millions of dollars.

25.    Until earlier this year, it appeared that Defendants had kept their promises—all of the internal Company financial statements showed that Pierson or the Pierson LLC was an equity owner; Pierson and/or the Pierson LLC shared in the Company's profits and losses as an equity owner; in its business dealings, the Company held Pierson out as an equity owner; and in numerous emails, Kuba referred to Pierson as an equity owner or partner in the Company.

26.    For instance, in a March 2, 2018, e-mail, at a time when Defendants had promised Pierson that he owned thirty-four percent (34%) of the Company, Kuba wrote:



27.    Since December 1, 2017, Defendants led Plaintiffs to believe that Plaintiffs owned thirty-four percent (34%) of the Company, and the Company's records reflect that Plaintiffs owned thirty-four percent (34%) of the Company.

28.     That changed in May 2021, when Kuba informed Pierson that because Pierson "was not papered up" (i.e., in Kuba's view, there were no written agreements reflecting Pierson's ownership in the Company), Pierson was not an owner of the Company.

29.     It is now clear that for nearly a decade, Defendants knowingly, intentionally, systematically, and repeatedly lied to Pierson about Pierson's ownership in the Company to induce Pierson to remain at the Company, work hard, and make millions of dollars for Defendants.

30.     As alleged herein and as will be further developed in discovery, by repeatedly lying to Pierson about Pierson's ownership in the Company, Defendants engaged in common law fraud and Plaintiffs are accordingly entitled to compensatory and punitive damages. In addition, because the Defendants have been unjustly enriched by their misconduct, Plaintiffs are entitled to equitable remedies under the doctrine of unjust enrichment.

## COUNT I
## Fraud

31.     Plaintiffs restate each allegation contained in Paragraphs 1 - 30 above.

32.     Defendants repeatedly made false and material misrepresentations to Plaintiffs about Plaintiffs' ownership interest in the Company.

33.     Defendants knew the representations were false or they made them recklessly as a positive assertion without any knowledge of their truth.

34.     In making the false and material misrepresentations to Plaintiffs about Plaintiffs' ownership interest in the Company, Defendants intended to induce Plaintiffs to act or refrain from acting upon the misrepresentations.

35.     Plaintiffs actually and justifiably relied upon the misrepresentations and thereby suffered injury.

## COUNT II
### Unjust Enrichment

36.    Plaintiffs restate each allegation contained in Paragraphs 1 – 35 above.

37.    Defendants have been unjustly enriched by their misconduct and, pursuant to the doctrine of unjust enrichment, are required to make restitution to Plaintiffs for the benefits they have received from their misconduct and may be expected to receive in the future.

38.    Plaintiffs are entitled to recover damages from Defendants under the doctrine of unjust enrichment.

## COUNT III
### Punitive Damages

39.    Plaintiffs restate each allegation contained in Paragraphs 1 – 38 above.

40.    The misconduct of the Defendants, as alleged in this Complaint and as will be further developed in discovery, is sufficiently egregious to justify the imposition of punitive or exemplary damages in an amount that will satisfactorily punish the Defendants for their misconduct and deter the Defendants and others from following a like course.

### Relief Requested

WHEREFORE, Plaintiffs respectfully request that this Court award the following relief:

A.    Compensatory damages in a fair and just amount to be determined by a jury for Defendants' fraudulent conduct;

B.    Punitive damages in a fair and just amount to be determined by a jury for Defendants' fraudulent conduct;

C.    All of the equitable remedies to which the Plaintiffs are entitled under the doctrine of unjust enrichment;

D.    Prejudgment and post-judgment interest at the maximum rate allowable by law;

E.    Costs of suit as incurred in this action and attorney's fees; and

F.    All other relief that the Court may deem appropriate and just.

### Jury Demand

The Plaintiffs hereby demand a trial by jury on all of their causes of action against Defendants.

Dated:    December **21**, 2021

Respectfully submitted,

Paul R. Cranston, Esq. (W. Va. Bar #5191)
**CRANSTON & EDWARDS, PLLC**
Dorsey Avenue Professional Bldg.
1200 Dorsey Avenue, Suite II
Morgantown, West Virginia 26501
Phone: (304) 296-3500
Fax: (304) 296-3600
E-Mail: pcranston@cranstonedwards.com
Counsel for Plaintiffs

7

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

MONONGALIA CO CIRCUIT COURT
75 HIGH STREET
SUITE 12
Morgantown, WV 26505-5427

**Control Number:** 285303

**Defendant:** BRYSON KUBA
133 LAKESIDE DRIVE
MALAKOFF, TX 75148 US

**County:** Monongalia

**Civil Action:** 21-C-365

**Certified Number:** 92148901125134100003377805

**Service Date:** 12/21/2021

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document
directly to the court or the plaintiff's attorney, shown in the enclosed paper,* **not to the Secretary of State's office**.

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

**FILED**

DEC 27 2021

JEAN FRIEND, CLERK

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:**  304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

MONONGALIA CO CIRCUIT COURT
75 HIGH STREET
SUITE 12
Morgantown, WV 26505-5427

**Control Number:** 285304
**Defendant:** BRYSON KUBA, LP
133 LAKESIDE DRIVE
MALAKOFF, TX 75148 US

**County:** Monongalia
**Civil Action:** 21-C-365
**Certified Number:** 92148901125134100003377812
**Service Date:** 12/21/2021

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process  in your name and on your behalf as your attorney-in-fact.  Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

Mac Warner
Secretary of State



# SUMMONS

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**KEVIN M. PIERSON, A West Virginia resident,**
**And**
**BLUE DUCK RESOURCES, LLC FKA**
**Kevin Pierson, LLC, a Texas limited liability company**

### PLAINTIFF(S),

**VS.**                                              CIVIL ACTION NO.  21-C-365

**BRYSON KUBA**
**A Texas resident**
**133 Lakeside Drive, Malakoff, TX  75148**

**And**

~~**BRYSON KUBA, LP**~~
**A Texas limited liability company**
**133 Lakeside Drive, Malakoff, TX  75148**

### DEFENDANT(S).

To the above-name Defendants:

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve **PAUL R. CRANSTON** whose address is **1200 Dorsey Avenue, Suite II, Morgantown WV  26501** an answer including any related counterclaim you may have to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer within **30** days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled action.

DATED:  December 21, 2021

*Jean Friend*

JEAN FRIEND, CLERK
MONONGALIA CO. CIRCUIT COURT

BY *Susan Trowbridge*

DEPUTY CLERK

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**KEVIN M. PIERSON,**
**A West Virginia Resident,**
**and**
**BLUE DUCK RESOURCES, LLC FKA**
**KEVIN PIERSON, LLC,**
**a Texas Limited Liability Company**

      **Plaintiffs,**

**v.**
                                     **Civil Action No. 21-c-365**
                                     **Case No. 21-C-365, Judge Tucker**

**BRYSON KUBA,**
**A Texas Resident**
**133 Lakeside Drive, Malakoff, TX 75148**
**and**
**Bryson Kuba, LP**
**A Texas Limited Partnership**
**133 Lakeside Drive, Malakoff, TX 75148,**

      **Defendants.**

### NOTICE OF FILING OF NOTICE OF REMOVAL

    **PLEASE TAKE NOTICE** that the above-styled Civil Action No. 21-C-365, on the docket in the Circuit Court of Monongalia County, West Virginia, is being removed pursuant to 28 USC § 1332, 28 USC § 1441, and 28 USC § 1446 to the United States District Court for the Northern District of West Virginia, Clarksburg Division.  A copy of the Notice of Removal is attached hereto as <u>Exhibit 1</u>.  This Notice serves to cause the full removal of this action and precludes the Circuit Court of Monongalia County from proceeding further in this action.

                                         **BRYSON KUBA, and**
                                         **BRYSON KUBA, L.P.**
                                       **By counsel,**

**FILED**

JAN 19 2022

**JEAN FRIEND, CLERK**

Alonzo D. Washington (W.Va. Bar No. 8019)
Flaherty Sensabaugh Bonasso PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
(304) 598-0788 - telephone
(304) 598-0790 – facsimile
awashington@flahertylegal.com

- and –

Jeffrey A. Foster (W. Va. Bar No. 9410)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
P. O. Box 3843
Charleston, WV 25338-3843
(304) - 345-0200 – telephone
(304) - 345-0260 – facsimile
jfoster@flahertylegal.com

Alonzo D. Washington (W. Va. Bar No. 8019)
**Flaherty Sensabaugh Bonasso, PLLC**

and

Jeffrey A. Foster (W. Va. Bar No. 9410)
**Flaherty Sensabaugh Bonasso, PLLC**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

**KEVIN M. PIERSON,**
**A West Virginia Resident,**
**and**
**BLUE DUCK RESOURCES, LLC FKA**
**KEVIN PIERSON, LLC,**
**a Texas Limited Liability Company**

      **Plaintiffs,**

**v.**                              **Civil Action No. _____**
                                             **(Monongalia County Circuit Court**
                                             **Case No. 21-C-365, Judge Tucker)**

**BRYSON KUBA,**
**A Texas Resident**
**133 Lakeside Drive, Malakoff, TX 75148**
**and**
**Bryson Kuba, LP**
**A Texas Limited Partnership**
**133 Lakeside Drive, Malakoff, TX 75148,**

      **Defendants.**

## <u>NOTICE OF REMOVAL</u>

      Pursuant to 28 U.S.C. § 1332, § 1441 and § 1446, Defendants Bryson Kuba and Bryson

Kuba, LP (collectively "Defendants"), by and through counsel, hereby file the following Notice of

Removal and remove this action from the Circuit Court of Monongalia County, West Virginia, to

the United States District Court for the Northern District of West Virginia, which is the judicial

district in which the action is pending.  As shown below, this Court has original jurisdiction over

this matter pursuant to diversity jurisdiction under 28 U.S.C. §1332(a); venue is proper; removal

is timely; the action is between citizens of different states; and the amount in controversy exceeds



$75,000.00, exclusive of interest and costs. Defendants set forth the grounds for removal as follows:

## I.    BACKGROUND

1.    Plaintiff commenced the above-captioned matter by filing a Complaint in the Circuit Court of Monongalia County on or about December 21, 2021, against Defendants. The state court action is styled *Kevin M. Pierson and Blue Duck Resources, LLC, f/k/a Kevin Pierson, LLC*, Case No. 21-C-365 (hereinafter the "State Action") (*See* Compl., attached as Exhibit A.)

2.    The State Action was served upon Defendants on December 27, 2021. In accordance with 28 U.S.C. § 1446(b), Defendants timely file this Notice of Removal within thirty (30) days after receiving a copy of the Complaint.

3.    Copies of all process, pleadings, and orders served upon Defendants are attached hereto as Exhibit B as required by 28 U.S.C. § 1446(a). A certified copy of the docket sheet is attached as Exhibit C.

4.    Defendants have not yet entered an appearance or filed any responsive pleadings or papers in response to Plaintiff's Complaint in the state court action.

## II.    BASIS FOR REMOVAL

5.    This civil action is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441 and 1446, because it is a civil action between citizens of different states wherein the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## A.    DIVERSITY OF CITIZENSHIP

6.    Plaintiff Kevin L. Pierson is citizen of the State of West Virginia.  (*See* Compl., ¶ 1.)

7.    Plaintiff Blue Duck Resources, LLC, f/k/a Kevin Pierson, LLC ("Pierson LLC"), is a Texas limited liability company with its principal place of business in Morgantown, West Virginia. (Compl. at ¶ 2.)  Plaintiff Pierson is the sole member of Pierson LLC.  (Compl. at ¶ 3.)

8.    The citizenship of a limited liability company is determined by the citizenship of all of its members. *Cent. W. Va. Energy Co., Inc. v. Mountain St. Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (*citing Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004)).  "The state of organization and the principal place of business of an unincorporated association are legally irrelevant." *Currence v. Wolf Run Mining, LLC*, No. 2:20-CV-10, 2020 WL 2079978, at *1 (N.D.W. Va. Apr. 30, 2020).

9.    Here, Mr. Pierson is the sole member of Pierson LLC.  As stated, Mr. Pierson is a citizen of West Virginia.  Thus, for diversity purposes, Pierson LLC is also a citizen of West Virginia.

10.    Defendant Bryson Kuba is a citizen of the state of Texas.  (Compl. at ¶ 4.)

11.    Defendant Bryson Kuba, L.P. ("Kuba L.P.") is a Texas limited partnership with its principal place of business in Malakoff, Texas. (Compl. at ¶ 6.)

12.    Defendant Bryson Kuba is a limited partner in Kuba L.P.  (*See* Partnership Agreement, dated January 2004 and attached hereto as Exhibit D.)  The only other partner is Kubaco Consulting, Inc.  (*See* Exhibit D at p. 3.)  Kubaco Consulting, Inc. is a Texas corporation

3

with its principal place of business in Houston, Texas. (*See* Texas Secretary of State corporation details for Kubaco Consulting, Inc., attached as Exhibit E.) For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C.A. § 1331(c)(1). "'[P]rincipal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's business activities." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010). Here, Kubaco Consulting, Inc., is incorporated in Texas, has its main address in Texas, and all of the officers and directors are citizens of and located in Texas. (*See* Exhibit E.) Thus, both the general partner and limited partner of Kuba L.P. are citizens of Texas, which makes Kuba L.P. a citizen of Texas for diversity purposes.

13.    Therefore, diversity of citizenship exists between Plaintiff and the defendants because Plaintiffs are citizens of a state different from the Defendants. 28 U.S.C. § 1332(d)(2)(A).

**B.    AMOUNT IN CONTROVERSY**

14.    Pursuant to 28 U.S.C. § 1332(a), federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

15.    Here, the amount in controversy meets or exceeds $75,000.00.

16.    In the Complaint, Plaintiffs assert claims of fraud (Count I), unjust enrichment (Count II), and punitive damages (Count III). Each claim centers around Plaintiffs' allegation[1] that the Defendants promised Mr. Pierson that he would own equity in Kuba, L.P., and misrepresented whether he actually did own equity in the company. (*See, e.g.*, Compl. at ¶ 22.)

---

[1] Defendants deny these allegations and reserve all defenses available to them, including improper venue and lack of personal jurisdiction.

More specifically, Plaintiff alleges that Defendants promised Plaintiff that he owned thirty-four percent (34%) of Kuba L.P. (*See, e.g.*, Compl. at ¶ 26) The Complaint further alleges that, "as a direct result of Pierson's efforts in West Virginia, Defendants literally made millions of dollars." (Compl. at ¶ 24.)

17.     Although Plaintiff's Complaint does not claim a specific damage amount, it does contain an *ad damnum* clause that seeks compensatory damages, punitive damages, and attorneys' fees and costs.   Thus, in the aggregate, Plaintiffs' assertions that he is entitled attorneys' fees; costs; punitive damages; compensatory damages; and up to thirty-four percent (34%) ownership of Kuba, L.P.—a company which he alleges to have made "millions" of dollars for, it is clear that the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000). "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (internal citation and quotation omitted).

18.     Moreover, Plaintiffs assert a claim for punitive damages.   "If relevant state law permits punitive damages on the facts alleged, such punitive damages are part of the amount in controversy for jurisdictional amount purposes." *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). The amount of punitive damages that may be awarded in a civil action in West Virginia may not exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater.  W. Va. Code §55-7-29(c).  *See also CSX Transp.*, 729 S.E.2d at 175 (upholding punitive damages award of $500,000.00 for plaintiff's claims of, *inter alia*, sexual harassment/hostile work environment).

19.     Based on the above, the amount in controversy in this case is greater than the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

20.     Thus, this action may be removed to this Court by Defendants because diversity exists between the parties and the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

### III.     VENUE IS PROPER

21.     The Circuit Court of Monongalia County, West Virginia is located within the United States Northern District of West Virginia. *See* 28 U.S.C. § 129(a). Thus, venue is proper in this Court as it is the district "embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### IV.     CONSENT TO REMOVAL

22.     Under 28 U.S.C. § 1441(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."

23.     The undersigned counsel represents all Defendants in this action. Counsel asserts that each Defendant consents to the removal of this action to this Court.

### V.     FILING OF REMOVAL PAPERS

24.     In accordance with 28 U.S.C. § 1446(d), written notice of this removal has been provided simultaneously to Plaintiff and upon the Clerk of the Circuit Court of Monongalia County, West Virginia. (A copy of the Notice of Filing Notice of Removal (without exhibits) has been attached as Exhibit F.)

### VI.     CONCLUSION

6

25.    In sum, this Court has original jurisdiction over this action under 28 U.S.C. § 1332 because (i) complete diversity of citizenship between the parties exists, and (ii) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

26.    Accordingly, as the State court action is pending in the Circuit Court for Monongalia County, West Virginia, Defendants are entitled, pursuant to 28 U.S.C. § 1441(a), to remove this action to the United States District Court for the Northern District of West Virginia, Clarksburg Division.

WHEREFORE, Defendants request that this Court assume full jurisdiction over the cause herein as provided by law, and that the Circuit Court of Monongalia County, West Virginia proceed no further in this matter.

**BRYSON KUBA, and**
**BRYSON KUBA, L.P.**
**By counsel,**

/s/ Alonzo D. Washington
Alonzo D. Washington (W.Va. Bar No. 8019)
Flaherty Sensabaugh Bonasso PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
(304) 598-0788 - telephone
(304) 598-0790 – facsimile
awashington@flahertylegal.com

- and –

Jeffrey A. Foster (W. Va. Bar No. 9410)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
P. O. Box 3843
Charleston, WV 25338-3843
(304) - 345-0200 – telephone
(304) - 345-0260 – facsimile
jfoster@flahertylegal.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

**KEVIN M. PIERSON,**
**A West Virginia Resident,**
**and**
**BLUE DUCK RESOURCES, LLC FKA**
**KEVIN PIERSON, LLC,**
**a Texas Limited Liability Company**

      **Plaintiffs,**

**v.**                              **Civil Action No. _____**
                                         **(Monongalia County Circuit Court**
                                       **Case No. 21-C-365, Judge )**

**BRYSON KUBA,**
**A Texas Resident**
**133 Lakeside Drive, Malakoff, TX 75148**
**and**
**Bryson Kuba, LP**
**A Texas Limited Partnership**
**133 Lakeside Drive, Malakoff, TX 75148,**

      **Defendants.**

### <u>CERTIFICATE OF SERVICE</u>

PLEASE NOTE that the undersigned, on behalf of Defendants, Bryson Kuba and Bryson

Kuba, LP, does hereby certify that the foregoing *"Notice of Removal"* has been served upon

opposing counsel on this **19**[th] day of **January 2022**, by using the CM/ECF system, which will

send notification of such filing to the following:

Paul R. Cranston, Esquire
Cranston & Edwards, PLLC
Dorsey Avenue Professional Building
1200 Dorsey Avenue, Suite II
Morgantown, West Virginia 26501
Phone:  (304) 296-3500
<u>pcranston@cranstonedwards.com</u>
*Counsel for Plaintiff*

 /s/ Alonzo D. Washington
Alonzo D. Washington (W. Va. Bar No. 8019)
**Flaherty Sensabaugh Bonasso, PLLC**

and

Jeffrey A. Foster (W. Va. Bar No. 9410)
**Flaherty Sensabaugh Bonasso, PLLC**

**IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA**

**KEVIN M. PIERSON,**
**A West Virginia Resident,**
**and**
**BLUE DUCK RESOURCES, LLC FKA**
**KEVIN PIERSON, LLC,**
**a Texas Limited Liability Company**

      **Plaintiffs,**

**v.**　　　　　　　　　　　　　　　　　　**Civil Action No. 21-c-365**
　　　　　　　　　　　　　　　　　　　　**Case No. 21-C-365, Judge Tucker**

**BRYSON KUBA,**
**A Texas Resident**
**133 Lakeside Drive, Malakoff, TX 75148**
**and**
**Bryson Kuba, LP**
**A Texas Limited Partnership**
**133 Lakeside Drive, Malakoff, TX 75148,**

      **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

PLEASE NOTE that the undersigned, on behalf of Defendants, Bryson Kuba and Bryson Kuba, LP, does hereby certify that the foregoing *"Notice of Filing of Notice of Removal"* has been served upon opposing counsel on this **19ᵗʰ** day of **January 2022**, by U.S. Postal Service to the following:

Paul R. Cranston, Esquire
Cranston & Edwards, PLLC
Dorsey Avenue Professional Building
1200 Dorsey Avenue, Suite II
Morgantown, West Virginia  26501
Phone:  (304) 296-3500
Fax:  (304) 296-3600
pcranston@cranstonedwards.com
*Counsel for Plaintiff*

3

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

KEVIN M. PIERSON, a West
Virginia resident, and BLUE
DUCK RESOURCES, LLC, f/k/a
Kevin Pierson, LLC, a Texas
limited liability company,

     Plaintiffs,

v.                                                    Civil Action No. _21-C-365_

BRYSON KUBA, a Texas resident,
and BRYSON KUBA, LP, a Texas
limited partnership,

     Defendants.

### COMPLAINT

For their Complaint against the Defendants, Bryson Kuba ("Kuba") and Bryson Kuba, LP (the "Company", and collectively with Kuba, the "Defendants"), the Plaintiffs, Kevin M. Pierson ("Pierson") and Blue Duck Resources, LLC, f/k/a Kevin Pierson, LLC ("Pierson LLC", and collectively with Pierson, the "Plaintiffs"), by counsel, aver as follows:

### The Parties

1.     Pierson is a resident of Morgantown, West Virginia.

2.     The Pierson LLC is a Texas limited liability company with its principal place of business in Morgantown, West Virginia.

3.     Pierson is now and has always been the sole member of the Pierson LLC.

4.     Kuba is a resident of Malakoff, Texas.

5.     Kuba owns property in Monongalia County, West Virginia at 143 S. Pierpont Road, Morgantown, West Virginia.

**EXHIBIT A**

A TRUE COPY ATTEST:

*[signature]*

FILED
DEC 2 1 '21

JEAN FRIEND, CLERK

6.     The Company is a Texas limited partnership. Since 2009, the Company has maintained an office in Morgantown, West Virginia, and it has transacted business in West Virginia, including Monongalia County, on a regular basis.

**Jurisdiction**

7.     West Virginia's long-arm statute, West Virginia Code § 56-3-33(a) (the "Long-Arm Statute"), confers *in personam* jurisdiction on a non-resident who has an interest in, uses or possesses real property in West Virginia. *See* W. Va. Code § 56-3-33(a)(6).

8.     This Court has *in personam* jurisdiction over Kuba under the Long-Arm Statute because Kuba owns an interest in real property in West Virginia. Specifically, Kuba owns an interest in real property located at 143 S. Pierpont Road, Morgantown, West Virginia.

9.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who has transacted business in West Virginia. *See* W. Va. Code § 56-3-33(a)(1).

10.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants have transacted business in West Virginia.

11.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who regularly does or solicits business in West Virginia and has caused tortious injury in West Virginia by an act or omission outside the state. *See* W. Va. Code § 56-3-33(a)(4).

12.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants regularly do or solicit business in West Virginia and have caused tortious injury in West Virginia by an act or omission outside the state.

13.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who derives substantial revenue from services rendered in West Virginia and has caused tortious injury in West Virginia by an act or omission outside the state. *Id.*

2

14.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants have derived substantial revenue from services rendered in West Virginia and have caused tortious injury in West Virginia by an act or omission outside the state.

### Venue

15.     Pursuant to West Virginia Code § 56-1-1(a)(1), venue is proper in the Circuit Court of Monongalia County, West Virginia, because the vast majority of Defendants' promises, misrepresentations and lies about Plaintiffs' ownership in the Company were made to Plaintiffs in Monongalia County and the causes of action against Defendant arose here.

### Factual Allegations

16.     This is a case about Defendants' fraud, deceit, and broken promises.

17.     The Company is a professional land management company with experience in oil and gas project management and lease acquisition. Kuba is the Company's founder, and HE exercises a large degree of dominion and control over the Company.

18.     In 2007, Kuba recruited Pierson to work for the Company in its Fort Worth, Texas office as a contract field landman.

19.     Pierson agreed to work for the Company on a contract basis, and he established Kevin Pierson, LLC[1] to be the contracting party with the Company.

20.     In 2009, the Company secured a large oil and gas project from XTO Energy in the Appalachian Basin, and Kuba convinced Pierson to move from Texas to West Virginia to manage the project.

21.     At Kuba's request, Pierson moved to West Virginia in late 2009.

---

[1] Kevin Pierson, LLC changed its name to Blue Duck Resources, LLC on June 15, 2021.

3

22.    In December 2011, Kuba purchased a large home at 143 S. Pierpont Road, Morgantown, West Virginia, and the Company opened its West Virginia office there.

23.    Defendants repeatedly promised Pierson that in exchange for Pierson's hard work and success at the Company, Defendants would ensure that Pierson would own "equity" (i.e., an ownership interest) in the Company.

24.    As a direct result of Pierson's efforts, the Company's West Virginia office was a great success. In fact, as a direct result of Pierson's efforts in West Virginia, Defendants literally made millions of dollars.

25.    Until earlier this year, it appeared that Defendants had kept their promises—all of the internal Company financial statements showed that Pierson or the Pierson LLC was an equity owner; Pierson and/or the Pierson LLC shared in the Company's profits and losses as an equity owner; in its business dealings, the Company held Pierson out as an equity owner; and in numerous emails, Kuba referred to Pierson as an equity owner or partner in the Company.

26.    For instance, in a March 2, 2018, e-mail, at a time when Defendants had promised Pierson that he owned thirty-four percent (34%) of the Company, Kuba wrote:

> **Re: Equity checks**  External  D  (Import kp@bklpland.com) ×
>
> **Bryson Kuba** <brysonkuba@hotmail.com>
> to Bryson, Travis, Kevin ▾
> **Equity checks can be deposited.**
>
> Sent from my iPhone

27.    Since December 1, 2017, Defendants led Plaintiffs to believe that Plaintiffs owned thirty-four percent (34%) of the Company, and the Company's records reflect that Plaintiffs owned thirty-four percent (34%) of the Company.

4

28.    That changed in May 2021, when Kuba informed Pierson that because Pierson "was not papered up" (i.e., in Kuba's view, there were no written agreements reflecting Pierson's ownership in the Company), Pierson was not an owner of the Company.

29.    It is now clear that for nearly a decade, Defendants knowingly, intentionally, systematically, and repeatedly lied to Pierson about Pierson's ownership in the Company to induce Pierson to remain at the Company, work hard, and make millions of dollars for Defendants.

30.    As alleged herein and as will be further developed in discovery, by repeatedly lying to Pierson about Pierson's ownership in the Company, Defendants engaged in common law fraud and Plaintiffs are accordingly entitled to compensatory and punitive damages. In addition, because the Defendants have been unjustly enriched by their misconduct, Plaintiffs are entitled to equitable remedies under the doctrine of unjust enrichment.

**COUNT I**
**Fraud**

31.    Plaintiffs restate each allegation contained in Paragraphs 1 - 30 above.

32.    Defendants repeatedly made false and material misrepresentations to Plaintiffs about Plaintiffs' ownership interest in the Company.

33.    Defendants knew the representations were false or they made them recklessly as a positive assertion without any knowledge of their truth.

34.    In making the false and material misrepresentations to Plaintiffs about Plaintiffs' ownership interest in the Company, Defendants intended to induce Plaintiffs to act or refrain from acting upon the misrepresentations.

35.    Plaintiffs actually and justifiably relied upon the misrepresentations and thereby suffered injury.

## COUNT II
### Unjust Enrichment

36.     Plaintiffs restate each allegation contained in Paragraphs 1 – 35 above.

37.     Defendants have been unjustly enriched by their misconduct and, pursuant to the doctrine of unjust enrichment, are required to make restitution to Plaintiffs for the benefits they have received from their misconduct and may be expected to receive in the future.

38.     Plaintiffs are entitled to recover damages from Defendants under the doctrine of unjust enrichment.

## COUNT III
### Punitive Damages

39.     Plaintiffs restate each allegation contained in Paragraphs 1 – 38 above.

40.     The misconduct of the Defendants, as alleged in this Complaint and as will be further developed in discovery, is sufficiently egregious to justify the imposition of punitive or exemplary damages in an amount that will satisfactorily punish the Defendants for their misconduct and deter the Defendants and others from following a like course.

### Relief Requested

WHEREFORE, Plaintiffs respectfully request that this Court award the following relief:

A.     Compensatory damages in a fair and just amount to be determined by a jury for Defendants' fraudulent conduct;

B.     Punitive damages in a fair and just amount to be determined by a jury for Defendants' fraudulent conduct;

C.     All of the equitable remedies to which the Plaintiffs are entitled under the doctrine of unjust enrichment;

D.     Prejudgment and post-judgment interest at the maximum rate allowable by law;

E.    Costs of suit as incurred in this action and attorney's fees; and

F.    All other relief that the Court may deem appropriate and just.

**Jury Demand**

The Plaintiffs hereby demand a trial by jury on all of their causes of action against Defendants.

Dated:    December **21**, 2021

Respectfully submitted,

Paul R. Cranston, Esq. (W.Va. Bar #5191)
**CRANSTON & EDWARDS, PLLC**
Dorsey Avenue Professional Bldg.
1200 Dorsey Avenue, Suite II
Morgantown, West Virginia 26501
Phone: (304) 296-3500
Fax: (304) 296-3600
E-Mail: pcranston@cranstonedwards.com
Counsel for Plaintiffs

7



**SUMMONS**

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

KEVIN M. PIERSON, A West Virginia resident,
And
BLUE DUCK RESOURCES, LLC FKA
Kevin Pierson, LLC, a Texas limited liability company

PLAINTIFF(S),

VS.                                    CIVIL ACTION NO.  21-C-365

BRYSON KUBA
A Texas resident
133 Lakeside Drive, Malakoff, TX 75148

And

BRYSON KUBA, LP
A Texas limited liability company
133 Lakeside Drive, Malakoff, TX 75148

DEFENDANT(S).

To the above-name Defendants:

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve PAUL R. CRANSTON whose address is 1200 Dorsey Avenue, Suite II, Morgantown WV 26501 an answer including any related counterclaim you may have to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer within 30 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled action.

DATED:  December 21, 2021

JEAN FRIEND, CLERK
MONONGALIA CO. CIRCUIT COURT

BY
DEPUTY CLERK

EXHIBIT
B

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

KEVIN M. PIERSON, a West
Virginia resident, and BLUE
DUCK RESOURCES, LLC, f/k/a
Kevin Pierson, LLC, a Texas
limited liability company,

    Plaintiffs,

v.                                                              Civil Action No. 21-C-365

BRYSON KUBA, a Texas resident,
and BRYSON KUBA, LP, a Texas
limited partnership,

    Defendants.

## COMPLAINT

For their Complaint against the Defendants, Bryson Kuba ("Kuba") and Bryson Kuba, LP (the "Company", and collectively with Kuba, the "Defendants"), the Plaintiffs, Kevin M. Pierson ("Pierson") and Blue Duck Resources, LLC, f/k/a Kevin Pierson, LLC ("Pierson LLC", and collectively with Pierson, the "Plaintiffs"), by counsel, aver as follows:

### The Parties

1.    Pierson is a resident of Morgantown, West Virginia.

2.    The Pierson LLC is a Texas limited liability company with its principal place of business in Morgantown, West Virginia.

3.    Pierson is now and has always been the sole member of the Pierson LLC.

4.    Kuba is a resident of Malakoff, Texas.

5.    Kuba owns property in Monongalia County, West Virginia at 143 S. Pierpont Road, Morgantown, West Virginia.

6.     The Company is a Texas limited partnership. Since 2009, the Company has maintained an office in Morgantown, West Virginia, and it has transacted business in West Virginia, including Monongalia County, on a regular basis.

### Jurisdiction

7.     West Virginia's long-arm statute, West Virginia Code § 56-3-33(a) (the "Long-Arm Statute"), confers *in personam* jurisdiction on a non-resident who has an interest in, uses or possesses real property in West Virginia. *See* W. Va. Code § 56-3-33(a)(6).

8.     This Court has *in personam* jurisdiction over Kuba under the Long-Arm Statute because Kuba owns an interest in real property in West Virginia. Specifically, Kuba owns an interest in real property located at 143 S. Pierpont Road, Morgantown, West Virginia.

9.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who has transacted business in West Virginia. *See* W. Va. Code § 56-3-33(a)(1).

10.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants have transacted business in West Virginia.

11.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who regularly does or solicits business in West Virginia and has caused tortious injury in West Virginia by an act or omission outside the state. *See* W. Va. Code § 56-3-33(a)(4).

12.     This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants regularly do or solicit business in West Virginia and have caused tortious injury in West Virginia by an act or omission outside the state.

13.     The Long-Arm Statute also confers *in personam* jurisdiction on a non-resident who derives substantial revenue from services rendered in West Virginia and has caused tortious injury in West Virginia by an act or omission outside the state. *Id.*

2

14.    This Court has *in personam* jurisdiction over Defendants under the Long-Arm Statute because Defendants have derived substantial revenue from services rendered in West Virginia and have caused tortious injury in West Virginia by an act or omission outside the state.

### Venue

15.    Pursuant to West Virginia Code § 56-1-1(a)(1), venue is proper in the Circuit Court of Monongalia County, West Virginia, because the vast majority of Defendants' promises, misrepresentations and lies about Plaintiffs' ownership in the Company were made to Plaintiffs in Monongalia County and the causes of action against Defendant arose here.

### Factual Allegations

16.    This is a case about Defendants' fraud, deceit, and broken promises.

17.    The Company is a professional land management company with experience in oil and gas project management and lease acquisition. Kuba is the Company's founder, and HE exercises a large degree of dominion and control over the Company.

18.    In 2007, Kuba recruited Pierson to work for the Company in its Fort Worth, Texas office as a contract field landman.

19.    Pierson agreed to work for the Company on a contract basis, and he established Kevin Pierson, LLC[1] to be the contracting party with the Company.

20.    In 2009, the Company secured a large oil and gas project from XTO Energy in the Appalachian Basin, and Kuba convinced Pierson to move from Texas to West Virginia to manage the project.

21.    At Kuba's request, Pierson moved to West Virginia in late 2009.

---

[1] Kevin Pierson, LLC changed its name to Blue Duck Resources, LLC on June 15, 2021.

22.    In December 2011, Kuba purchased a large home at 143 S. Pierpont Road, Morgantown, West Virginia, and the Company opened its West Virginia office there.

23.    Defendants repeatedly promised Pierson that in exchange for Pierson's hard work and success at the Company, Defendants would ensure that Pierson would own "equity" (i.e., an ownership interest) in the Company.

24.    As a direct result of Pierson's efforts, the Company's West Virginia office was a great success. In fact, as a direct result of Pierson's efforts in West Virginia, Defendants literally made millions of dollars.

25.    Until earlier this year, it appeared that Defendants had kept their promises—all of the internal Company financial statements showed that Pierson or the Pierson LLC was an equity owner; Pierson and/or the Pierson LLC shared in the Company's profits and losses as an equity owner; in its business dealings, the Company held Pierson out as an equity owner; and in numerous emails, Kuba referred to Pierson as an equity owner or partner in the Company.

26.    For instance, in a March 2, 2018, e-mail, at a time when Defendants had promised Pierson that he owned thirty-four percent (34%) of the Company, Kuba wrote:

Re: Equity checks  External  ⟩  :(import kp@bklplend.com) ×

Bryson Kuba <brysonkuba@hotmail.com>
to Bryson, Travis, Kevin ▾
Equity checks can be deposited.

Sent from my iPhone

27.    Since December 1, 2017, Defendants led Plaintiffs to believe that Plaintiffs owned thirty-four percent (34%) of the Company, and the Company's records reflect that Plaintiffs owned thirty-four percent (34%) of the Company.

28.    That changed in May 2021, when Kuba informed Pierson that because Pierson "was not papered up" (i.e., in Kuba's view, there were no written agreements reflecting Pierson's ownership in the Company), Pierson was not an owner of the Company.

29.    It is now clear that for nearly a decade, Defendants knowingly, intentionally, systematically, and repeatedly lied to Pierson about Pierson's ownership in the Company to induce Pierson to remain at the Company, work hard, and make millions of dollars for Defendants.

30.    As alleged herein and as will be further developed in discovery, by repeatedly lying to Pierson about Pierson's ownership in the Company, Defendants engaged in common law fraud and Plaintiffs are accordingly entitled to compensatory and punitive damages. In addition, because the Defendants have been unjustly enriched by their misconduct, Plaintiffs are entitled to equitable remedies under the doctrine of unjust enrichment.

## COUNT I
### Fraud

31.    Plaintiffs restate each allegation contained in Paragraphs 1 - 30 above.

32.    Defendants repeatedly made false and material misrepresentations to Plaintiffs about Plaintiffs' ownership interest in the Company.

33.    Defendants knew the representations were false or they made them recklessly as a positive assertion without any knowledge of their truth.

34.    In making the false and material misrepresentations to Plaintiffs about Plaintiffs' ownership interest in the Company, Defendants intended to induce Plaintiffs to act or refrain from acting upon the misrepresentations.

35.    Plaintiffs actually and justifiably relied upon the misrepresentations and thereby suffered injury.

## COUNT II
### Unjust Enrichment

36.     Plaintiffs restate each allegation contained in Paragraphs 1 – 35 above.

37.     Defendants have been unjustly enriched by their misconduct and, pursuant to the doctrine of unjust enrichment, are required to make restitution to Plaintiffs for the benefits they have received from their misconduct and may be expected to receive in the future.

38.     Plaintiffs are entitled to recover damages from Defendants under the doctrine of unjust enrichment.

## COUNT III
### Punitive Damages

39.     Plaintiffs restate each allegation contained in Paragraphs 1 – 38 above.

40.     The misconduct of the Defendants, as alleged in this Complaint and as will be further developed in discovery, is sufficiently egregious to justify the imposition of punitive or exemplary damages in an amount that will satisfactorily punish the Defendants for their misconduct and deter the Defendants and others from following a like course.

### Relief Requested

WHEREFORE, Plaintiffs respectfully request that this Court award the following relief:

A.     Compensatory damages in a fair and just amount to be determined by a jury for Defendants' fraudulent conduct;

B.     Punitive damages in a fair and just amount to be determined by a jury for Defendants' fraudulent conduct;

C.     All of the equitable remedies to which the Plaintiffs are entitled under the doctrine of unjust enrichment;

D.     Prejudgment and post-judgment interest at the maximum rate allowable by law;

E.    Costs of suit as incurred in this action and attorney's fees; and

F.    All other relief that the Court may deem appropriate and just.

**Jury Demand**

The Plaintiffs hereby demand a trial by jury on all of their causes of action against Defendants.


Dated:    December *21*, 2021            Respectfully submitted,

Paul R. Cranston, Esq. (W. Va. Bar #5191)
**CRANSTON & EDWARDS, PLLC**
Dorsey Avenue Professional Bldg.
1200 Dorsey Avenue, Suite II
Morgantown, West Virginia 26501
Phone: (304) 296-3500
Fax: (304) 296-3600
E-Mail: pcranston@cranstonedwards.com
Counsel for Plaintiffs

CASE#: **21-C-365**          Sub Code:                    Date Opened:  12/21/2021

                                                          Date Printed:  01/06/2022

JUDGE:  SUSAN B. TUCKER

    Plaintiff:   **KEVIN M. PIERSON**

vs   Defendant:   **BRYSON KUBA**

    Pro Attorney:  PAUL R. CRANSTON

    Def Attorney:

| Page | Date | Memorandum | | Account# | Earned | Collected | Balance |
|------|------|------------|---|----------|--------|-----------|---------|
| 1 | 12/21/2021 | Complaint Filed | | | 200.00 | 200.00 | .00 |
| 2 | 12/21/2021 | Additional clerk/filing fee | | | 40.00 | 40.00 | .00 |
| 3 | 12/21/2021 | Additional filing fee for 2 pls. | | | 200.00 | 200.00 | .00 |
| 4 | 12/27/2021 | S/S accepted service on behalf of Bryson Kuba, & Bryson Kuba LP  on | | | .00 | .00 | .00 |
| 5 | 12/27/2021 |    12/21/21 | | | .00 | .00 | .00 |
| | | | | **Totals** | **440.00** | **440.00** | **.00** |



A TRUE COPY
ATTEST _____ CLERK
MONONGALIA COUNTY CIRCUIT COURT

EXHIBIT
C

> **The agreement of limited partnership are not required to be filed with this office. Therefore, the agreement is being returned to your attention.**

of Harris County, Texas, pursuant to the current provisions of the Revised Limited Partnership Act (the "Act").

WHEREAS, all of the natural persons that are parties to this Agreement are citizens of the United States of America and residents of the State of Texas. The present intended purpose of the business will be:

LAND TITLE CONSULTATION

or any one or more of the foregoing activities;

THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

### ARTICLE 1

### ORGANIZATION

1.1    **Name of Limited Partnership:**  The name of the partnership shall be

BRYSON KUBA, L. P.

And all Partnership business shall be conducted in such name. All Partnership property shall be held in the name of the Partnership and not in the name of any Partner.

1.2    **Organization:**  The partnership is hereby organized as a Texas Limited Partnership. The General Partner(s) shall make all filings and disclosures required by, and shall otherwise comply with, the applicable laws of the State of Texas.

1.3    **Term:**  The Partnership shall begin on the effective date of this document and shall continue until terminated as herein provided or by operation of law. The disability, death, retirement, withdrawal, termination, or bankruptcy of any Partner shall not dissolve or terminate the Partnership.

1.4    **Place of Business:**  The principle place of Partnership business shall be located

1



EXHIBIT
D

## LIMITED PARTNERSHIP AGREEMENT FOR
## BRYSON KUBA, L. P.

AGREEMENT made this 1st day of January 2004, among: KUBACO CONSULTING, INC. (hereafter sometimes referred to as the General Partner) and among the following initial Limited Partners:

### BRYSON KUBA

of Harris County, Texas, pursuant to the current provisions of the Revised Limited Partnership Act (the "Act").

WHEREAS, all of the natural persons that are parties to this Agreement are citizens of the United States of America and residents of the State of Texas. The present intended purpose of the business will be:

### LAND TITLE CONSULTATION

or any one or more of the foregoing activities;

THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

### ARTICLE 1

### ORGANIZATION

1.1     **Name of Limited Partnership:**  The name of the partnership shall be

### BRYSON KUBA, L. P.

And all Partnership business shall be conducted in such name. All Partnership property shall be held in the name of the Partnership and not in the name of any Partner.

1.2     **Organization:**  The partnership is hereby organized as a Texas Limited Partnership. The General Partner(s) shall make all filings and disclosures required by, and shall otherwise comply with, the applicable laws of the State of Texas.

1.3     **Term:**  The Partnership shall begin on the effective date of this document and shall continue until terminated as herein provided or by operation of law. The disability, death, retirement, withdrawal, termination, or bankruptcy of any Partner shall not dissolve or terminate the Partnership.

1.4     **Place of Business:**  The principle place of Partnership business shall be located

1

at <u>401 S. PALESTINE #148, ATHENS, TEXAS 75751.</u> The Partnership shall be entitled to establish other Partnership offices both within and without Texas and to change the principal office as may be approved by a majority of the Partners. The registered agent and registered office shall be

<u>KUBACO CONSULTING, INC., 401 S. PALESTINE, #148
ATHENS, TEXAS 75751</u>

1.5    **Purposes:** The purpose of the Partnership is to engage in:

LAND TITLE CONSULTATION

Or any one or more of the foregoing activities and to carry on related activities, and manage any property which comes to he Partnership by way of income so long as such activity is consistent with the laws of Texas.

1.6    **Purposes Restricted:** The Partnership shall function as a Partnership only for the purpose specified in Section 1.5 hereof. The Partnership is prohibited from engaging in any other activity or business unless there is a formal amendment to this agreement, and the General Partner(s) shall have no authority to hold itself or themselves out a general agents of another Partner or any third party in any other activity.

The Partners shall conduct themselves according to the provisions of the Act unless otherwise modified by the terms of this Agreement, unless adherence to the provisions of this Agreement would jeopardize the limitations of liability of the Limited Partners in any respect.

1.7    **No Payments of Individual Obligations:** The Partnership's assets and credit shall be used by the General Partner solely for the benefit of the Partnership. The Partnership's assets shall not be transferred or used in any way for the payment of any individual Partner obligation.

1.8    **Title of Property:** The Partnership shall own, as an entity, all real and personal property, and Partners shall have no ownership interest in such property in their individual names or rights. Each Partner's Partnership interest shall be personal property for all purposes.

## ARTICLE II

## DEFINITIONS

**"Act"** shall mean the Texas Revised Limited Partnership Act (Tex. Rev. Civ. Stat. Ann., Art 6132a et seq.) as now in effect or as hereafter amended.

**"Agreement"** shall mean this Agreement of Limited Partnership as the same may be amended or supplemented from time to time.

Words such as **"hereof"**, **"herein"**, and **"hereto"** refer to this Agreement as a whole,

2

unless the context requires otherwise. The term **"Provisions of this Agreement"** includes the terms and provisions hereof and of all such amendments.

**"Capital Contributions"** shall mean the amount of money contributed by each Partner to the Partnership with respect to the Limited Partnership Interest held by such Partner pursuant to the terms of this Agreement.

**"Estate"** shall mean the estate or any successor in interest of a Partner, Retiree, or Disabled Partner, so long as any payments are due to or from such estate or successor in interest, under any provisions in this agreement.

**"Partnership"**, interchangeable terms in this document, shall include the entity now organized and the same continuing entity, however named, notwithstanding changes in personnel by additions of new Partners or termination of the membership of any Partners.

**"General Partner"** shall mean the person elected to the office of General Partner in accordance with Section 7.1.

**"Partners"** shall include, unless expressly qualified or distinguished, all General Partners and Limited Partners whose partnership interest has not been terminated.

**"Percentage of Interest"** shall mean, with respect to each Partner, his or her percentage of ownership in the Partnership and the corresponding assets and avails therefore. This interest may vary from time to time. Each Partner's percentage of Partnership Interest in the Partnership shall be based on his or her relative capital contributions to the Partnership.


## ARTICLE III

### PARTNER'S FINANCIAL INTEREST

3.1    **Capital Contributions:** The capital of the Partnership shall be maintained at a sufficient level as to adequately provide necessary working capital and facilities for the operation of the business, as determined by the General Partner. The initial capital contribution shall be made in cash concurrently with the execution of this Agreement and maintained in a capital account for each Partner. The names, addresses, and initial capital contributions of each Partner, and each Partner's percentage interest in the Partnership are set forth below, and they shall be revised from time to time to reflect the admission and withdrawal of Partners.

| | %Interest | Capital Contribution |
|---|---|---|
| BRYSON KUBA (Limited Partner) | 99% | $    990.00 |
| KUBACO CONSULTING, INC. (General Partner) | 1% | 10.00 |
| | | $  1,000.00 |

3

3.2    **Capital Accounts:** Accounting shall be maintained by the Partnership for each Partner in accordance with generally accepted accounting principals and current Treasury Regulations, including Section 1.704-1(b)(2)(iv). The capital account of each Partner shall be credited with his capital contribution and shall be appropriately adjusted to reflect each Partner's allocation of profits, losses, and distributions.

3.3    **Interest:** No interest shall be paid to Partners on any contributions to capital and no capital account shall bear interest.

3.4    **Additional Voluntary Capital Contributions:** Partners may make capital contributions in excess of the amounts set forth in Section 3.1 whenever the General Partner determines that such capital contributions are necessary or desirable to accomplish the Partnership's objectives. Partners shall be limited to additional capital contributions in relation to their percentage interest. Thereafter, the percentage interests shall be readjusted based upon the newly adjusted capital account balance of each Partner.

3.5    **Liability of Limited Partners:** No Limited Partner shall be liable for any of the debts, contracts, liabilities or other obligations of the Partnership. The liability of the Limited Partners to the Partnership is limited to the amount of their respective capital contributions. The intent of this paragraph is to permit the Limited Partners to enjoy the maximum protections from liability possible under the Act.

3.6    **Allocation of Profits and Losses:** All net income, net losses, and credits and items of gain or loss of the Partnership shall be allocated to each Partner in accordance with each Partner's percentage interest, consistent with Sections 704 and 706 of the Internal Revenue Code and the Treasury Regulations promulgated for those sections.

The calculations for the net profits and losses of the Partnership shall be divided or borne as determined in good faith by the General Partner. The basis of participation by Partners in profits and losses may be altered in any year, by unanimous agreement of the Partners.

3.7    **Priority and Distribution of Assets:** Except as otherwise provided herein, no Partner shall have priority over any other Partner either as to the return of capital or as to profits, losses, or distributions.

3.8    **Withdrawal from Capital Account:** Except as provided by this Agreement, no Partner shall be entitled to withdraw any part of his capital account or to receive any distribution.

3.9    **Loans to the Partnership:** In addition to making the mandatory capital contributions discussed herein, the Partners may loan the Partnership additional capital on a pro rata basis. This amount will be in proportion to each Partner's

4

ownership. The interest on additional capital loans will be treated as a Partnership expense and not as an income-distribution adjustment. Loans shall not be considered capital contributions. Loans shall bear interest at 1% over the floating prime rate at Chase Bank.

## ARTICLE IV

## COMPENSATION

**Partners' Compensation:** Each General Partner may be compensated for services rendered to the Partnership. The Partnership may deduct such compensation as a necessary expense of business before determining net profits. Any General Partner's compensation may be increased or reduced at any time by unanimous agreement of the Partners.

## ARTICLE V

## INSURANCE

5.1    **Liability Insurance:** The Partnership shall have in force adequate GENERAL liability insurance.

5.2    **Casualty Insurance:** The Partnership shall have in force adequate casualty insurance to protect it against all types of property damage, including but not limited to theft, vandalism, hurricanes, hail, storms, floods, and fire.

## ARTICLE VI

## CHANGES IN OWNERSHIP

6.1    **Admission of New Partners:** At any time during the Partnership's fiscal year, a new Partner may be admitted to the Partnership only by a unanimous vote of the Partners. Each new Partner must be in good standing and not be legally prohibited from becoming a partner in a partnership organized under the laws of Texas. Each new Partner shall be required to execute or affirm in writing this Agreement and all supplements to it. The Partnership shall not dissolve upon the admission of a new Partner.

6.2    **New Partner's Ownership:** Once admitted to the Partnership, each Partner shall be allowed to purchase an initial equity amount unanimously agreed to by the Partners. This amount is set forth in paragraph 3.1 above or as amended from time to time by Schedule A attached hereto which shall replace 3.1 upon unanimous approval by all the Partners.

6.3    **No Classes of Limited Partners:** All Limited Partners are of the same class and have identical and equal rights, except as otherwise provided herein.

6.4    **Sale or Merger:** If a Partner has not acquired his entire equity interest when a sale or merger of the Partnership or its assets occurs, then that Partner may accelerate his buy-in and receive the percentage of gain that is equal to the

5

equity interest that he has acquired at the accelerated level. However, he shall not receive that percentage of the gain on the equity interest that he has not acquired.

6.5    **Partition:**    No Partner shall take any action resulting in the partition or appraisement of the Partnership or any of its assets.

6.6    **Withdrawal:**    Any Partner who is not in violation of this Agreement may withdraw from the Partnership at any time upon delivery to all Partners of sixty (60) day prior written notice specifying the date upon which such withdrawal is to become effective. Such withdrawal shall not dissolve the Partnership, which shall continue among the remaining Partners and a replacement Partner shall only be required if the withdrawing Partner is the sole General Partner at the time.

6.7    **Deceased Partners Execution of Documents:**    The Partnership and the representative/estate of deceased Partner or its representative shall execute documents and instruments of conveyance and transfer as may be necessary or appropriate to confirm the withdrawal of the deceased Partner as a Partner as of the date of death.

## ARTICLE VII

## GOVERNANCE

7.1    **General Partner:**    The General Partner shall be elected by at least a three quarters (3/4ths) vote of the Partners. On the General Partner's death, disability, or resignation, a successor General Partner shall be elected by a majority of the Partners. The General Partner may be removed upon unanimous vote of the other Partners, with each Partner having one (1) vote. However, if there be only two Partners at the time (including the General Partner) then only one of the two Partners is needed to remove the General Partner, and then the Partnership will thereafter be dissolved immediately if the two Partners can no longer agree who will be the General Partner.

7.2    **Duties of General Partner:**    Notwithstanding anything herein to the contrary and subject to conflicting terms under the Act, the complete and sole management of the Partnership is hereby vested in the General Partner. His duties shall include-

Partnership's activities and administering firm policies, procedures, and long-range plans.

Delegating both professional and administrative functions to staff.

Organizing Partnership operations, developing departments and specialties, and maintaining performance standards.

Developing quality control procedures.

Defining criteria, pursuing acquisitions, and developing offices.

6

Maintaining effective firm-wide objectives and organizational structure.

Insuring adequate working conditions space, equipment, supervision, and opportunity.

Authorizing business with customers.

Providing staff training in technical and managerial skills, if any.

Exercising financial controls to achieve goals, including: financial reporting, pricing determination, budget management, account billing, and payables control.

Providing and maintaining adequate insurance coverage for all appropriate areas of concern.

Maintaining profitability.

Insuring adequate working capital by defining requirements, controlling capital withdrawals, maintain borrowing lines, and coordinating purchasing.

Entering contracts or purchasing assets up to one thousand dollars ($1,000) per item.

Committing to short-term loans on behalf of the Partnership.

Preparing and adopting a schedule of charges.

Investing Partnership funds at no risk.

Authorizing and executing contracts, commitments, and other legal documents in a manner consistent with this Agreement.

Directing all Partnership related business.

Resolving disputes.

Motivating staff to improve.

Monitoring, administering, and updating this Agreement with any necessary consents.

Designating those who shall execute contracts, agreements, or other instruments on the Partnership's behalf.

**The General Partner may not-**

Do any act in contravention of this agreement.

Independently admit or expel any Limited Partner.

7

Confess judgment against the Partnership.

Increase his own salary.

Violate any provision of this Agreement.

Invest Partnership funds in risky ventures.

Make political contributions on the Partnership's behalf in excess of one thousand dollars ($1,000.) in the aggregate per year.

Independently merge or sell the Partnership.

Vote on the Election and Termination of the General Partner: A meeting for the purpose of electing or removing the General Partner shall be held after written notice at least ten (10) days in advance specifying the hour and purpose of the meeting.

Amend this Agreement.

## ARTICLE VIII

## MEETINGS AND VOTING

8.1    **Meetings:** The Partners' annual meeting shall be held at a time and place to be specified by the General Partner in writing at least thirty (30) days before the scheduled meeting or as otherwise unanimously agreed by the Partners.

8.2    **General Voting:** Each General Partner(s), if more than one, shall have an equal voice in the management of the Partnership, with each such General Partner having one (1) vote, which can be cast either in person or by proxy. Unless otherwise specified herein and assuming a quorum is present, all decisions shall be made by a majority vote of the General Partner(s), provided no such determination shall be contrary to a provision of law or of this Agreement. The Limited Partners shall have no such vote regarding management of the Partnership, except as expressly stated in the document.

8.3    **Decisions Requiring Limited Partner Vote:** Except as otherwise provided herein, the following decisions shall not be made without at least a three quarters (3/4ths) vote of the Partners, cast either in person or by proxy, assuming a quorum is present.

Election or removal of a General Partner

Admission or expulsion of a Partner

The sale of assets in excess of one thousand dollars ($1000.)

8

Merger with another business

Relocation of the Partnership's principal office or the opening of any Partnership office

Compromise of any amount due to the Partnership of more than one thousand dollars ($1000.)

Capital expenditures greater than five thousand dollars ($5,000).

Repeal or modification of any provisions of this Agreement

8.4    **No Authority to Bind Partnership:** The Limited Partners have no authority to bind or to sign any papers on behalf of the Partnership. All authority to act on behalf of the partnership is vested in the General Partner at all times.

8.5    **Limited Liability:** The Limited Partners have no personal liability whatsoever whether it be to the Partnership, the General partner, or any creditor of the Partnership beyond the respective Limited Partner's Capital Contribution.

8.6    **No Management Rights:** The Limited Partners may not take part in any management of the Partnership or transact any business for or on behalf of the Partnership. All management responsibility is vested in the General Partner, subject to approval of the Limited Partners in those specific instances described in this Agreement.

## ARTICLE IX

## DUTIES AND RESPONSIBILITIES

9.1    **Partner's Authority to Act on Partnership's Behalf:** The General Partner is authorized to take actions to the extent that they are necessary to permit such General Partner to carry on the practice of business in accordance with the Act and in accordance with the provisions of this Agreement.

9.2    **Restrictions on Limited Partners' Actions:** No Limited Partner shall act on behalf of the Partnership; nor shall any Limited Partner mortgage, lease, or encumber Partnership property; or confess any judgment on behalf of the Partnership, without the express written authority of the Managing Partner.

9.3    **Indemnification:** The General Partner shall indemnify and hold harmless the Partnership and each Partner from claims, damages, and expenses arising from its own negligence to the extent that the acts are not covered by, or the amount of damages exceeds, the Partnership's insurance coverage.

9.4    **Expenses:** Expenses incurred by General Partner in furtherance of Partnership business are subject to reimbursement.

9

# ARTICLE X

## FINANCIAL MANAGEMENT

10.1    Books of Account: The General Partner shall maintain, at its principal office, comprehensive books of account for the Partnership which shall show an accurate record of all transactions of the Partnership and its condition as well as the names and addresses of the Partners. The General Partner shall be responsible for maintaining and updating all tax information, reporting, and tax compliance for the Partnership. The Partnership shall keep its records and file all Partnership income tax returns using the cash method of accounting but shall periodically prepare financial statements and make all financial determinations under this Agreement in accordance with generally accepted accounting principles. Each Partner or his legal representative, shall, at his sole expense, have the right, upon reasonable notice and at reasonable times, to examiners copy, and audit the Partnership's books and records.

10.2    Method of Accounting: The Partnership's books of account shall be kept on a cash basis.

10.3    Fiscal Year: The Partnership's fiscal year shall be the year ending December 31.

10.4    Tax Returns: The Partnership tax returns shall be filed on a cash basis, and each Partner shall be furnished, within ninety (90) days after the close of each fiscal year of the Partnership, and no later than April 1, with a copy of each tax return and any other information which each Partner may require in connection with each Partner's own tax matters.

10.5    Operating Statements: An operating statement shall be prepared and submitted by the General Partner to each Partner at the close of at least each calendar quarter. The statement shall set forth Partnership operations for the preceding quarter.

10.6    Partner Reports: The Partnership shall provide each Partner, within ninety (90) days, and no later than April 1, after the close of each fiscal year, with a copy of the Partnership's financial statements including profit and loss statements, balance sheets, and a capital account balance for each Partner. The Partnership's accountants shall review such statements.

Unless written objection is made by a Partner within ninety (90) days after actual receipt of such financial statements, each such annual accounting shall constitute an accord and satisfaction, and a release and discharge as of the end of such year of all claims not reflected in such statements which any Partner has against the Partnership or against any other Partner arising out of the operation of the Partnership.

10.7    Adoption of Financial Statements and Tax Returns: Each Partner shall have ninety (90) days after receipt to dispute the Partnership tax return and financial statement, after which time such tax return and financial statement will be deemed binding.

10

10.8   **Banking:** All Partnership funds shall be deposited in its name, in such checking accounts or similar accounts with member banks of the FDIC as approved by the General Partner(s). Partnership funds shall not be commingled with the funds of any other person or entity.

10.9   **Tax Matters:** The Partnership designates the General Partner as the party to receive notices from the Internal Revenue Service which pertain to the Partnership's tax affairs and to be responsible for maintaining and updating all tax information, tax reporting and tax compliance.

## ARTICLE XI

## DISPUTE RESOLUTION,
## DISSOLUTION, AND WINDING UP

11.1   **Mediation:** Any controversy or claim which arises under the terms of this Agreement and which is not resolved through negotiation shall be settled by mediation in accordance with the current Commercial Mediation Rules of the American Arbitration Association before resorting to arbitration, litigation, or some other dispute resolution procedure. The costs of mediation shall be shared equally by the parties to the dispute.

11.2   **Arbitration:** Any controversy or claim which arises under the terms of this Agreement and which is not resolved through negotiation or mediation shall be settled by arbitration in accordance with the current Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The costs of arbitration shall be allocated among the parties as directed by the arbitrators.

11.3   **Attorney's Fees:** If any legal action is instituted to enforce the provisions of this Agreement, the prevailing party shall be entitled to receive, in addition to such other relief as may be granted, reasonable attorney's fees and costs.

11.4   **Dissolution:** The Partnership shall dissolve and be terminated on or upon the earlier happening of any one of the following, unless the Partners unanimously agree to continue the Partnership:

(i) The unanimous written consent of the Partners

(ii) The bankruptcy or receivership of the General Partner.

(iii) The occurrence of any event which, under the Act or as otherwise provided by law, causes a dissolution or termination of the Partnership

The Partners shall share in profits and losses during the liquidation period in the same proportions in which they shared profits and losses prior to the termination of the Partnership business. The Limited Partners' liability is limited as set forth in this Agreement and as provided under the Act. It is understood that no dissolution of the Partnership releases any of the parties to this Agreement of their contractual obligations under this Agreement.

11

11.5 . Winding up: Upon the dissolution of the Partnership, the General Partner(s) shall designate a Liquidator of the Partnership who shall, with reasonable speed, wind up Partnership business, sell all Partnership property, and distribute the proceeds of liquidation in the following manner:

First, pay all debts to creditors other than Partners.

Second, pay all debts to Partners, other than capital loans to Partners.

Third, pay all capital loans to Partners.

Fourth, distribute to Partners the balances of their capital accounts. If any Partner's capital account has a deficit balance, such Partner shall contribute to the capital of the Partnership the amount of the deficit in that Partner's capital account within ninety (90) days after the date of the liquidation.

. Fifth, allocate any remaining funds among present Partners in proportion to their capital accounts prior to dissolution.

Partners shall act in a fashion that is consistent with the winding up of the Partnership's business and affairs. The Liquidator shall comply with all requirements of the Act and other applicable laws pertaining to the winding up of a partnership, following which the Partnership shall stand liquidated and terminated.

11.6 **Rights of Partners:** Except as otherwise provided herein, Partners are restricted to the Partnership's assets for the return of their capital contributions, and they shall have no right to receive value other than cash from the Partnership.

11.7 **Files and Workpapers:** The General Partner agrees that files shall be maintained for the purpose of retaining copies of income tax returns, financial statements, and other documents prepared and issued by the Partnership, together with the attendant worksheets. The Partnership, not the individual Partners, shall have title to and ownership of such files.

11.8 **Confidential Relationship:** It shall be the duty of the General Partner to maintain in confidence, to the greatest extent reasonably possible, any and all information relating to the affairs of the Partnership.

## ARTICLE XII

## MISCELLANEOUS

12.1 **Binding Effect:** This Agreement shall be binding upon and inure to the benefit of the respective Partners and all future Partners of this firm who are admitted to the Partnership in accordance with its terms and provisions. Each Partner binds and obligates himself, his spouse or estate, and any and all persons claiming by, through, or under him. No person shall have any rights or

12

obligations relating to the Partnership greater than those set forth in this Agreement, and no person shall acquire an interest in the Partnership or become a Partner except as permitted by the terms of this Agreement.

12.2  **Amendments:** This Agreement may be amended, modified, or revoked in whole or in part by a unanimous vote of the Partners. No amendment, modification, or revocation shall become effective until it has been reduced to writing and signed by all Partners.

12.3  **Governing Law:** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that venue for any court proceedings is proper in Harris County, Texas.

12.4  **Notices:** Any notice, payment, demand, offer and acceptance, or other communication (collectively referred to as "notice") required or permitted pursuant to this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally upon the Partner to whom notice is given; or on the second business day after mailing if mailed to the Partner to whom notice is to be given, by first class mail, postage prepaid, and addressed to the addressee at the address designated herein; or on the first business day after it is transmitted if telegraphed, telexed, or express mailed to the addressee at the address designated herein. Any Partner may change his address by giving written notice to the Partnership, to the attention of the other Partners. Notices to the Partnership shall similarly be given and addressed to it at its principal place of business.

12.5  **Construction:** Every provision, term, and covenant of this Agreement shall be construed according to its fair meaning and not strictly for or against any Partner.

12.6  **Usage:** Wherever from the context it appears appropriate, references to the masculine shall include the feminine and neuter; the feminine shall include the masculine and neuter; the neuter shall include the masculine and feminine; the singular shall include the plural; and the plural shall include the singular.

12.7  **Headings:** The captions included in this Agreement are for reference purposes only and shall not affect the interpretation of this Agreement.

12.8  **Severability:** Every provision of this Agreement is intended to be severable. If any provision term, covenant, or condition of this Agreement or application thereof to any person or circumstance is held invalid, the remainder of the Agreement shall remain in full force and effect, and shall be interpreted as though such provision were not included herein.

12.9  **Entire Agreement:** This Agreement contains the entire agreement of the Partners with respect to its subject matter and supersedes any and all prior negotiations, understandings, and agreements with regard hereto. Any oral representations or modifications shall be unenforceable unless reduced to writing and signed by the person to be charged.

12.10  **Incorporation by Reference:** Every exhibit and schedule attached to this

13

Agreement and referred to herein is incorporated into this Agreement by reference.

12.11  **Counterparts:** This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which, when taken together, shall be deemed one and the same instrument.

Should it become necessary to introduce into evidence before any court or other tribunal the text of this Agreement, it shall not be necessary to offer evidence of the execution of this Agreement by any party other than the party against whom, or by whom, it is sought to enforce the provisions of this Agreement.

12.12  **Waiver:** Failure or delay of either party in exercising any right or remedy under this Agreement, or any other agreement between them, or otherwise, will not operate as a waiver thereof. The express waiver by any party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach of said party. No waiver shall be effective until it is reduced to writing and signed by the waiving party.

12.13  **Further Acts:** Each Partner shall perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

12.14  **Third-Party Claims:** This Agreement shall solely benefit the parties to this Agreement and their affiliates. No other person shall be able to enforce or make any claims pursuant to its provisions.

12.15  **Indemnification:** If a final judgment is levied against the Partnership, which becomes a lien against the property of a Partner(s), or if any Partner(s) is required to pay such judgment, the Partnership shall secure the discharge of such lien and shall indemnify such Partner(s) with respect to such payment.

12.16  **Incorporation of Partner:** Any Partner may incorporate or organize pursuant to Texas law. The newly created entity shall then be admitted as a Partner to the Partnership in lieu of the individual Partner.

12.17  Each person signing this Agreement:

(a) understands that this Agreement contains legally binding provisions,

(b) has had the opportunity to consult with a lawyer of their own choosing, and

(c) has either consulted a lawyer or consciously decided not to consult a lawyer.

14

IN WITNESS WHEREOF, the parties have caused this Agreement of Partnership to be executed as of the date first set forth above.

General Partner:     KUBACO CONSULTING, INC.

By: _____
     BRYSON KUBA, PRESIDENT

_____
BRYSON KUBA, LIMITED PARTNER

15

Franchise Search Results





# Franchise Tax Account Status

As of : 01/13/2022 08:35:27

**This page is valid for most business transactions but is not sufficient for filings with the Secretary of State**

| | |
|---|---|
| **KUBACO CONSULTING, INC.** | |
| **Texas Taxpayer Number** | 32000307507 |
| **Mailing Address** | 4915 LAMONTE LN HOUSTON, TX 77092-5639 |
| **❷ Right to Transact Business in Texas** | ACTIVE |
| **State of Formation** | TX |
| **Effective SOS Registration Date** | 11/24/1997 |
| **Texas SOS File Number** | 0146954200 |
| **Registered Agent Name** | BRYSON KUBA |
| **Registered Office Street Address** | 4915 LAMONTE LANE HOUSTON, TX 77092 |



EXHIBIT

E

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

KEVIN M. PIERSON,
A West Virginia Resident,
and
BLUE DUCK RESOURCES, LLC FKA
KEVIN PIERSON, LLC,
a Texas Limited Liability Company

      Plaintiffs,

v.
                                    Civil Action No. 21-c-365
                                    Case No. 21-C-365, Judge Tucker

BRYSON KUBA,
A Texas Resident
133 Lakeside Drive, Malakoff, TX 75148
and
Bryson Kuba, LP
A Texas Limited Partnership
133 Lakeside Drive, Malakoff, TX 75148,

      Defendants.

<u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

**PLEASE TAKE NOTICE** that the above-styled Civil Action No. 21-C-365, on the docket in the Circuit Court of Monongalia County, West Virginia, is being removed pursuant to 28 USC § 1332, 28 USC § 1441, and 28 USC § 1446 to the United States District Court for the Northern District of West Virginia, Clarksburg Division. A copy of the Notice of Removal is attached hereto as <u>Exhibit 1</u>. This Notice serves to cause the full removal of this action and precludes the Circuit Court of Monongalia County from proceeding further in this action.

                                        BRYSON KUBA, and
                                        BRYSON KUBA, L.P.
                                        By counsel,



EXHIBIT
F

Alonzo D. Washington (W.Va. Bar No. 8019)
Flaherty Sensabaugh Bonasso PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
(304) 598-0788 - telephone
(304) 598-0790 – facsimile
awashington@flahertylegal.com

- and –

Jeffrey A. Foster (W. Va. Bar No. 9410)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
P. O. Box 3843
Charleston, WV 25338-3843
(304) - 345-0200 – telephone
(304) - 345-0260 – facsimile
jfoster@flahertylegal.com

2

_____

Alonzo D. Washington (W. Va. Bar No. 8019)
**Flaherty Sensabaugh Bonasso, PLLC**

and

Jeffrey A. Foster (W. Va. Bar No. 9410)
**Flaherty Sensabaugh Bonasso, PLLC**

4

## OFFICE OF THE CIRCUIT CLERK OF MONONGALIA COUNTY



### JEAN FRIEND, CIRCUIT CLERK
75 HIGH STREET, SUITE 12
MORGANTOWN WV 26505
Telephone: 304-291-7240
Fax: 304-291-7273

17th Judicial Circuit

20th Family Court

January 19, 2022

Cheryl Dean Riley
United States District Court
Post Office Box 2857
Clarksburg, WV 26301

IN RE:   Kevin M. Pierson et al
Vs.
Byrson Kuba, et al
Civil Action No.  21-C-365

Dear Ms. Riley:

Enclosed please find copies of all pleadings filed in the above styled civil action that are being forwarded to you since this action has been removed to your Court.

Please contact this office if we can be of any further assistance in this matter.

Very truly yours,

Jean Friend
Circuit Clerk of Monongalia County

Enclosures

syt