```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**KEVIN M. PIERSON and**
**BLUE DUCK RESOURCES, LLC,**

      **Plaintiffs,**

  v.                                   **CIVIL ACTION NO. 1:22CV7**
                                                  **(KLEEH)**

**BRYSON KUBA and**
**BRYSON KUBA, LP,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

Pending is the Plaintiffs' motion for summary judgment, asking the Court to find that Texas law governs their claims [ECF No. 110]. For the reasons that follow, the Court **DENIES** their motion and holds that West Virginia law applies to this case.

## I.   Background

**A.   Factual History**

This case involves a business dispute between two individuals and their corporate alter egos. Kevin Pierson ("Pierson") is a resident of Morgantown, West Virginia. He is the sole member of Blue Duck Resources, LLC, formerly known as Kevin Pierson LLC ("Pierson LLC"), a Texas limited liability company with its principal place of business in Morgantown, West Virginia. Pierson and Pierson LLC are referred to collectively herein as the Plaintiffs.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

Bryson Kuba ("Kuba") is a resident of Malakoff, Texas. He is a limited partner in Bryson Kuba, LP ("BKLP"), a Texas limited partnership with its principal place of business in Texas. Kuba and BKLP are referred to collectively herein as the Defendants.

BKLP is a professional land management company with experience in oil and gas project management and lease acquisition. After Kuba hired Pierson in 2007, he worked as a landman out of BKLP's Fort Worth, Texas office for two years. In 2009, BKLP obtained a contract with XTO Energy, Inc. ("XTO") wherein BKLP would provide services related to XTO's marcellus shale project in West Virginia. At Kuba's request, Pierson moved to Morgantown, West Virginia to manage operations under the XTO contract. BKLP purchased a residence at 143 South Pierpont Road in Morgantown that operated as BKLP's West Virginia office and served as Pierson's base of operations.

From 2007 to 2012, BKLP and Pierson LLC entered annual written independent contractor agreements. Pursuant to these agreements, Pierson LLC would perform field landman services for BKLP as an independent contractor. Pierson was not entitled to any ownership interest in BKLP or profit sharing. Nor was he responsible for the losses or liabilities of BKLP. The parties' last independent contractor agreement expired on December 21, 2012.

The nature of the parties' business relationship after 2012 is the subject of this lawsuit and many of the relevant facts remain in

dispute. The Defendants contend that, although no further written agreements were executed, Pierson's status as an independent contractor never changed. The Plaintiffs, however, assert that Kuba led Pierson to believe that he had become a partner in BKLP and that he earned an ownership interest in the company from 2012 through 2021.

According to the Plaintiffs, Kuba repeatedly promised Pierson that he would earn equity in BKLP so long as he worked for the company. From 2012 to 2021, Pierson remained at BKLP in reliance on this promise and due to his belief that he owned a portion of the company. Pierson states that his understanding of the parties' relationship was premised on the company's financial statements which showed that the Plaintiffs had equity in BKLP, the fact that he shared in the company's profits and losses, and Kuba's references to him as an equity owner in internal correspondence and external interactions. It was not until May 2021, that Kuba revealed that Pierson had never had any ownership interest in BKLP.

The Defendants conversely allege that Kuba never led Pierson to believe that he had an ownership interest in BKLP. While Kuba made an offer to sell a portion of BKLP to Pierson in August 2014, Pierson declined. Pierson made a counteroffer that suggest he could earn ownership interests in BKLP through his labor. Kuba declined the counteroffer and the parties instead agreed only to a profit-sharing

arrangement. The Defendants assert that Pierson knew he had no ownership interest in BKLP because he managed the companies' West Virginia finances and operations.

Despite the parties' opposing positions, certain facts are undisputed. Pierson received a share of BKLP's profits, and his share increased over time; he initially received a 5% share but by 2021 he received a 34% share. Pierson also purchased an interest in the Morgantown office in 2014. Finally, the parties terminated their relationship in May 2021.

**B.   Procedural History**

On December 21, 2021, the Plaintiffs filed a complaint in the Circuit Court of Monongalia County, West Virginia, asserting claims for fraud and unjust enrichment [ECF No. 1-1]. Specifically, they contend that Kuba repeatedly assured Pierson that he owned a portion of BKLP to induce Pierson to remain with the company and continue to ensure its success. Id. As such, the Plaintiffs seek to recover the net profits Kuba made as a result of his misrepresentations. Id. The Defendants timely removed the case to this Court on January 19, 2022 [ECF No. 1]. Upon removal, the Plaintiffs amended their complaint [ECF No. 13].

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 110]**

Following the conclusion of discovery, the parties filed cross motions for summary judgment [ECF Nos. 110, 112].[1] The Plaintiffs' motion raises a singe issue: does West Virginia or Texas substantive law govern in this case [ECF No. 110]. The Plaintiffs contend that Texas law applies, whereas the Defendants assert that West Virginia law applies. The choice of law determines the types of relief the Plaintiffs may recover in this action as disgorgement of profits is a remedy available under Texas law but not under West Virginia law.

## II. Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Accocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine

---

[1] The Court will address the Defendants' motion for summary judgment by separate order.

issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

"When faced with cross-motions for summary judgment, the court must review each motion on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). The same standards of review apply when both parties file motions for summary judgment. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment").

### III. Discussion

**A.  West Virginia substantive law applies to this case.**

Federal courts exercising jurisdiction through diversity of citizenship must apply state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978) ("[F]ederal courts are to apply the substantive law the State in which they are sitting would apply if the case had originated in a State court."). This action was removed to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thus, it must apply West Virginia's choice of law analysis, which varies depending on how a claim is characterized, e.g., as a tort claim or as a contract claim. See Kenney v. Indep. Ord. of Foresters, 744 F.3d 901, 905 (4th Cir. 2014).

**i.  Fraud**

West Virginia's choice of law analysis for tort claims applies to the Plaintiffs' fraud claim. In this area, West Virginia traditionally "adheres to the conflicts of law doctrine of lex loci delicti." Syl. Pt. 1, Paul v. Nat'l Life, 352 S.E.2d 550 (W. Va. 1986). But "to resolve particularly thorny conflicts problems" West Virginia applies the most significant relationship approach set forth in the Restatement (Second) of Conflicts of Law, §§ 145-146. Oakes v. Oxygen Therapy Servs., 363 S.E.2d 130, 131–32 (W. Va. 1987).

While the Court doubts whether this case is so complex as to warrant application of the Restatement approach, it concludes that West Virginia law applies under either choice of law analysis.

Under the traditional lex loci delicti approach, courts apply the "law of the place of the wrong." "Although conduct that causes harm can occur in one state and the resulting injury to a plaintiff can occur in another state, 'the substantive rights between the parties are determined by the law of the place of injury.'" Kenney, 744 F.3d at 908 (quoting West Virginia ex rel. Chemtall Inc. v. Madden, 607 S.E. 2d 772, 779-80 (W. Va. 2004)).

Here, during the decade in dispute, Kuba remained in Texas and made his allegedly fraudulent representations there. But the Plaintiff undoubtedly felt the impact of the Defendants' actions in West Virginia, where he lived and worked. Pierson moved to West Virginia in 2009 and has remained here continuously since. Thus, he has been a West Virginia resident at all times relevant to this action. He lived and worked in West Virginia in 2012, the time he alleges the nature of the parties' business relationship changed and he first earned an ownership interest in BKLP. Pierson remained in West Virginia during the nine years he allegedly detrimentally relied on Kuba's repeated misrepresentations about his interest in BKLP. Further, Pierson discovered the Defendants' "big lie," that the Plaintiffs never owned a share of BKLP, while a West Virginia

resident. Because the injury to the Plaintiffs occurred in West Virginia, not Texas, West Virginia substantive law applies to their fraud claim pursuant to the lex loci delicti choice of law approach.

Employing the Restatement approach, the Court reaches the same conclusion. Section 145 of the Restatement states that, in tort cases, the substantive rights of the parties are determined by the law of the state that "has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145(2) (1971). It then provides several factors to be considered "according to their relative importance with respect to the particular issues" when determining the most significant relationship, including: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." Id. at § 145(2).

Section 6 of the Restatement also provides seven factors for consideration:

   (a)  The needs of the interstate and international systems;
   (b)  The relevant policies of the forum;
   (c)  The relevant policies of other interested states and relative interest of those states in the determination of the particular issue;
   (d)  The protection of justified expectations;

    (e)   The basic policies underlying the particular field of law;
    (f)   Certainty, predictability, and uniformity of results; and
    (g)   Ease in the determination and application of the law to be applied.

Id. at § 6.

As discussed above, the Plaintiffs' injury occurred in West Virginia and the Defendants' fraud occurred in Texas. Pierson has been a West Virginia resident since 2009. Although Pierson LLC is registered in Texas, its principal place of business is in West Virginia. Meanwhile, Kuba is a Texas resident and BKLP is a Texas partnership and has its principal place of business there. Thus, three of § 145 factors are split. But the fourth § 145 factor points to West Virginia as the state with the most significant relationship to the parties. Although the parties' relationship began in Texas, it has been centered in West Virginia for the last fourteen years. Pierson moved to West Virginia at Kuba's request to oversee the XTO contract. While here, he established and managed BKLP's Morgantown office. Since 2009, the parties' relationship has centered on their work in the Appalachian Basin, particularly, in West Virginia.

As to the factors set forth in § 6 of the Restatement, West Virginia's tort of "fraud" is designed to protect its citizens from surrendering some property or right due to deception. There is a justifiable expectation that West Virginia law would apply to this

case where the parties' relationship was centered here, there is no agreement between the parties stating that Texas law would govern any dispute between them, the Plaintiffs were allegedly deceived in West Virginia, and the Plaintiffs sought to recover damages for this harm by asserting claims for damages in a West Virginia state court. Further, applying Texas law in this case would violate West Virginia public policy, because Texas law permits disgorgement of profits where West Virginia law does not. Because West Virginia has the most significant relationship to the parties and to the Defendant's alleged fraud, this state's substantive law applies pursuant to the Restatement approach.

West Virginia law therefore applies to the Plaintiffs' fraud claim pursuant to both the lex loci delicti approach and the Restatement approach.

### ii.   Unjust Enrichment

The Plaintiffs' unjust enrichment claim is quasi-contractual. In analyzing contract claims, West Virginia applies the conflicts of law doctrine of lex loci contractus. Johnson v. Neal, 418 S.E.2d 349, 352 (W. Va. 1992). The substantive rights of the parties are therefore subject to "[t]he laws of the state where a contract is made and is to be performed." New v. Tac & C Energy, Inc., 355

S.E.2d 629, 630 (W. Va. 1987) (quoting Syl. Pt. 2 of In re Fox's Estate, 48 S.E.2d 1 (W. Va. 1948)).

Where the performance and contracting are not in the same state, West Virginia again turns to the Restatement (Second) of Conflicts. Section 196 of the Restatement provides that the law of the state where the contractual services, or a major portion of the services, are to be performed applies unless "some other state has a more significant relationship . . . to the transaction and the parties. . . ." The Restatement approach therefore establishes a two-part test, granting a presumption to the state where services are rendered. See New, 355 S.E.2d at 631.

In this case, the parties resided in, and negotiated their business arrangement from, separate states. But the Plaintiffs performed their duties in West Virginia. Thus, there is a presumption that West Virginia law applies and, as discussed above, the Plaintiffs have not demonstrated that Texas had a more significant relationship to the transaction, the parties, or their business arrangement.

## IV. Conclusion

West Virginia law applies to the Plaintiffs' fraud and unjust enrichment claims. The Court therefore **DENIES** the Plaintiffs' motion for summary judgment [ECF No. 110].

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to counsel of record.

**DATED:** August 21, 2023

*/s/ Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA