```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**KEVIN M. PIERSON and**
**BLUE DUCK RESOURCES, LLC,**

       **Plaintiffs,**

   **v.**                                      **CIVIL ACTION NO. 1:22CV7**
                                                                                   **(KLEEH)**

**BRYSON KUBA and**
**BRYSON KUBA, LP,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 112]**

Pending before the Court is *Defendants' Motion for Summary Judgment*. ECF No. 112. For the following reasons, the Court **GRANTS** Defendants Bryson Kuba and Bryson Kuba, LP's Motion.

## I.  Background

This case involves a business dispute between two individuals and their corporate alter egos. Kevin Pierson ("Pierson") is a resident of Morgantown, West Virginia. He is the sole member of Blue Duck Resources, LLC, formerly known as Kevin Pierson LLC ("Pierson LLC"), a Texas limited liability company with its principal place of business in Morgantown, West Virginia. Pierson and Pierson LLC are referred to collectively herein as the Plaintiffs.

Bryson Kuba ("Kuba") is a resident of Malakoff, Texas. He is a limited partner in Bryson Kuba, LP ("BKLP"), a Texas limited

partnership with its principal place of business in Texas. Kuba and BKLP are referred to collectively herein as the Defendants.

BKLP is a professional land management company with experience in oil and gas project management and lease acquisition. After Kuba hired Pierson in 2007, he worked as a landman out of BKLP's Fort Worth, Texas office for two years. In 2009, BKLP obtained a contract with XTO Energy, Inc. ("XTO") wherein BKLP would provide services related to XTO's marcellus shale project in West Virginia. At Kuba's request, Pierson moved to Morgantown, West Virginia to manage operations under the XTO contract. BKLP purchased a residence at 143 South Pierpont Road in Morgantown that operated as BKLP's West Virginia office and served as Pierson's base of operations.

From 2007 to 2012, BKLP and Pierson LLC entered annual written independent contractor agreements. Pursuant to these agreements, Pierson LLC would perform field landman services for BKLP as an independent contractor. Pierson was not entitled to any ownership interest in BKLP or profit sharing. Nor was he responsible for the losses or liabilities of BKLP. The parties' last independent contractor agreement expired on December 21, 2012.

The nature of the parties' business relationship after 2012 is the subject of this lawsuit. The Defendants contend that Pierson's status as an independent contractor never changed, and Pierson received 1099 tax forms from BKLP from 2015 to 2021. ECF

No. 113, Ex. 18. The Plaintiffs, however, assert that Kuba led Pierson to believe that he had become a partner in BKLP and that he earned an ownership interest in the company from 2012 through 2021.

According to the Plaintiffs, Kuba repeatedly promised Pierson that he would earn equity in BKLP so long as he worked for the company. From 2012 to 2021, Pierson remained at BKLP in reliance on this promise and due to his belief that he owned a portion of the company. Pierson states that his understanding of the parties' relationship was premised on the company's financial statements which showed that the Plaintiffs had equity in BKLP, the fact that he shared in the company's profits and losses, and Kuba's references to him as an equity owner in internal correspondence and external interactions.

For example, on October 31, 2014, Pierson sent Kuba an email which stated in pertinent part: "We are under the understanding that this is an equitable interest in the company (excluding the building) and not limited to revenue interest. Please advise if I understand this incorrectly." ECF No. 169-4, p. 10. Kuba replied to Pierson's email shortly thereafter stating, "Tried calling but really nothing to discus[s] but the answer is YES." Id. at p. 11.

The Defendants conversely allege that Kuba never led Pierson to believe that he had an ownership interest in BKLP. While Kuba made an offer to sell a portion of BKLP to Pierson in August 2014,

3

Pierson declined. Pierson made a counteroffer that suggested he could earn ownership interests in BKLP through his labor. Kuba declined the counteroffer and the parties instead agreed only to a profit-sharing arrangement. See ECF No. 169-4, August 28, 2014 email ("Effective 10/01/14 the bonus structure of the company will be an increase to both you and Kevin in the amount of 15% each. . . . All other aspects of how we are now operating will remain the same.") The Defendants assert that Pierson knew he had no ownership interest in BKLP because he managed the companies' West Virginia finances and operations, including Worker's compensation audits which reflected Bryson Kuba as 100% owner of BKLP [ECF No. 113, Ex. 9] and reported all his income as an independent contractor, not partnership income, on his taxes [ECF No. 113, Ex. 10, pp. 42-43, pp. 22, 159-162].

Moreover, to the extent Pierson believed he was given an ownership interest in BKLP, Defendants assert that Pierson knew he did not have an ownership interest by April 3, 2015. On April 3, 2015, Pierson emailed Kuba seeking clarity on the agreement reached in August/October 2014. Kuba responded stating "Who in their right mind would give away a total of 60 percent of an entire company." ECF No. 113, Ex. 14. Kuba sent a second email shortly after asserting that Pierson could have 100 percent of new clients he brought in, but for projects Kuba started using his own contacts, Pierson would get 15 percent. ECF No. 113, Ex. 15. Pierson

4

concluded the April 3, 2015 email communication, stating "That's that. End of discussion." Id. Pierson did not think that Kuba's position was what had been discussed or promised previously, but he "left it alone," because "[i]t wasn't worth fighting over." ECF No. 113, Ex. 11 at p. 95. However, according to Plaintiffs, it was not until May 2021, that Kuba revealed that Pierson had never had any ownership interest in BKLP.

Despite the parties' opposing positions, certain facts are undisputed. Pierson received a share of BKLP's profits, and his share increased over time; he initially received a 5 percent share but by 2021 he received a 34 percent share. Pierson also purchased an interest in the Morgantown office in 2014. Finally, the parties terminated their relationship in May 2021. See ECF No. 113, Ex. 19.

## II. Procedural History

On December 21, 2021, the Plaintiffs filed a complaint in the Circuit Court of Monongalia County, West Virginia, asserting claims for fraud and unjust enrichment [ECF No. 1-1]. Specifically, they contend that Kuba repeatedly assured Pierson that he owned a portion of BKLP to induce Pierson to remain with the company and continue to ensure its success. Id. As such, the Plaintiffs seek to recover the net profits Kuba made as a result of his misrepresentations. Id. The Defendants timely removed the case to this Court on January 19, 2022 [ECF No. 1].

5

Upon removal, the Plaintiffs amended their complaint [ECF No. 13]. Following the conclusion of discovery, the parties filed cross motions for summary judgment [ECF Nos. 110, 112]. On August 21, 2023, the Court denied Plaintiffs' Motion for Summary Judgment [ECF No. 110], holding that West Virginia law applies to Plaintiffs' claims for fraud and unjust enrichment. ECF No. 162. As a result, the Court directed the parties to supplement their briefings to Defendants' summary judgment motion in accordance with its holding. ECF No. 163. Accordingly, Plaintiffs filed their supplemental response in opposition on September 25, 2023 [ECF No. 169] and Defendants filed their supplemental reply in support of summary judgment on October 9, 2023 [ECF No. 170]. Thus, Defendants' Motion is fully briefed and ripe for review.

### III. Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Accocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a

6

determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV.  Discussion

Defendants move for summary judgment arguing that Plaintiffs have failed to demonstrate the essential elements of a fraud or unjust enrichment claim. ECF No. 112. Additionally, Defendants assert that Plaintiffs' claims, to the extent a dispute of material fact exists, should nonetheless be dismissed because they are

7

barred by the applicable statutes of limitation. See ECF No. 170. The Court addresses each of these arguments in turn.

### 1. Fraud

The Court grants summary judgment on the fraud claim, because the undisputed facts show that Plaintiff ratified the August/October 2014 agreement in April 2015. Fraud includes "all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another." Watkins by & through Chapman v. Judy, No. 1:22CV64, 2022 WL 17813704, at *3 (N.D.W. Va. Dec. 19, 2022) (quoting Stanley v. Sewell Coal Co., 285 S.E.2d 679, 682 (W. Va. 1981)). Under West Virginia law, the elements of fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by the defendant; (2) that it was material and false; (3) that the party relied upon it; and (4) that the party was damaged because he relied upon it. Univ. of W. Va. Bd. of Trustees v. VanVoorhies, 84 F. Supp. 2d 759 (N.D.W. Va. 2000), aff'd, 278 F.3d 1288 (Fed. Cir. 2002).

The Supreme Court of Appeals of West Virginia has long held that a fraudulent contract "is not void, but only voidable, and the party complaining may elect to repudiate it or to be bound by it. He has but one election, and if he elects to be bound, after knowledge of the fraud, he is thereby concluded." Coffman v.

8

Viquesney, 84 S.E. 1069 (W. Va. 1915); Engeman v. Taylor, 33 S.E. 922 (W. Va. 1899). See Cunningham v. LeGrand, No. 2:11-CV-0142, 2012 WL 2054112, at *7 (S.D.W. Va. June 5, 2012) ("the innocent obligor must either repudiate the contract or choose to waive the defect and ratify it."). Accordingly, "[a] party who seeks to avoid a contract for fraud must act promptly after the discovery thereof." Id. at 1070. See Reece v. Yeager Ford Sales, Inc., 184 S.E.2d 722, 725 (W. Va. 1971) (noting that "if fraud is relied on for rescission it must be asserted without delay after discovery.").

"One who has accepted benefits under a contract, . . . after knowledge of facts warranting rescission, ratifies the agreement." Corotoman, Inc. v. Cent. W. Virginia Reg'l Airport Auth., Inc., 582 F. Supp. 3d 343, 353-54 (S.D.W. Va. 2022). Additionally, "[r]atification of a contract may be found where a party intentionally accepts or retains the benefits of an invalid contract with full knowledge of the facts that make the contract voidable." Wells v. Antero Res. Corp., No. 1:20CV9, 2021 WL 1520000, at *4 (N.D.W. Va. Apr. 16, 2021) (quoting 17A C.J.S. Contracts § 185).

Here, Plaintiffs assert that there is enough evidence for a reasonable jury to find in their favor on the fraud claim because Kuba repeatedly referred to Pierson's interest in BKLP as "equity" and that Pierson responded affirmatively to Pierson's October 31,

9

2014 email, regarding his "equitable interest in the company." ECF No. 169-4, p. 10; ECF No. 169. Moreover, as a result of these assurances, Pierson contends that he stayed with BKLP and lost opportunities to start his own business.

If the October 31, 2014 email exchange was the end of the communication regarding the bonus structure versus equity debate, there would be a sufficient dispute as to a material fact to survive dismissal under Rule 56. However, the undisputed facts show that Kuba told Pierson in April 2015 that he was not an owner of BKLP. When Kuba informed Pierson that no one in their right mind would give away 60 percent of their entire company and told him that he was only entitled to 15 percent of the profits from BKLP's preexisting clients, Pierson was on notice that he was not an owner. By Plaintiffs' own admissions, Pierson did not contradict Kuba's understanding of the agreement; rather, Pierson "left it alone." ECF No. 113, Ex. 11 at p. 95.

Thus, assuming *arguendo* that Kuba fraudulently promised Pierson ownership in BKLP, the August/October 2014 agreement was voidable. But, the undisputed facts show that Pierson became aware of the fraud by April 3, 2015. Upon this discovery, Pierson was required to rescind the agreement. Instead, Plaintiffs continued to receive the benefits of the August/October 2014 agreement through May 2021, thereby ratifying the agreement. Because Plaintiffs knew as of April 2015 that Pierson was not an owner of

10

BKLP but did not timely rescind the agreement, Plaintiffs ratified the agreement as a bonus structure. Thus, Plaintiffs cannot bring a fraud claim as a matter of law and Defendants' Motion [ECF No. 112] is **GRANTED** on this ground. Plaintiffs' fraud claim is hereby **DISMISSED**.

### 2. Unjust Enrichment

If "benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." Realmark Developments, Inc. v. Ranson, 542 S.E.2d 880, 884-85 (W. Va. 2000). The right to recover for unjust enrichment is based on the principles of equity. "Unjust enrichment … is but the equitable *reason* for requiring payment for value of goods and services received." Realmark Developments, Inc. v. Ranson, 588 S.E.2d 150, 153 (W. Va. 2003) (quoting Nehi Beverage Co., Inc. of Indianapolis v. Petri, 537 N.E.2d 78, 85 (Ind.Ct.App. 1989)).

The elements of an unjust enrichment claim in West Virginia are:

> (1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

Richards v. Octane Env't, LLC, No. 1:18-CV-157, 2019 WL 6528595, at *4 (N.D.W. Va. Dec. 4, 2019) (quoting Barker v. Naik, No. 2:17-cv-04387, 2018 WL 3824376, at *5 (S.D.W. Va. Aug. 10, 2018)).

Defendants argue that the unjust enrichment claim should be dismissed because an express agreement existed between the parties. ECF No. 113, at pp. 16-17. Moreover, Defendants contend that Plaintiffs have failed to prove that Defendants retained a benefit they were not legally entitled to, because Pierson was paid the revenue interest he was promised in exchange for his continued work. Id. at pp. 20-22. Meanwhile, Plaintiffs contend that the unjust enrichment claim survives dismissal under Rule 56 because there was not a valid, enforceable written contract. ECF No. 169, at p. 10-11. And, Plaintiffs assert that they can maintain the claim without proving damage by the Defendants' alleged wrongful conduct and can elect damages for disgorgement. Id. at pp. 12-13.

The parties clearly disagree as to whether the August/October 2014 agreement encompassed the parties' agreement on ownership and equity. A genuine dispute of material fact could exist as to whether the August/October 2014 agreement only related to bonus structure, and if Defendants made separate promises regarding ownership. However, as explained below, the unjust enrichment claim is barred by the applicable statute of limitations. Thus, the Court need not reach this issue.

12

### 3. Statutes of Limitation

Regardless of whether Plaintiffs' evidence amounts to a genuine issue of material fact, the claims for fraud and unjust enrichment must be dismissed because they were untimely filed. Defendants assert in their response in support of summary judgment that Plaintiffs' claims are barred by the applicable statutes of limitation. ECF No. 170, at pp. 11-12. Additionally, Defendants raised this affirmative defense in their Answer to Plaintiffs' Amended Complaint. ECF No. 16, at p. 10 (Defendants "reserve unto themselves the defense that Plaintiffs' claims are barred by the applicable statute of limitations."). Importantly, "a defendant who asserts the statute of limitations as an affirmative defense in the answer to a complaint as required by Rule 8(c) of the West Virginia Rules of Civil Procedure does not subsequently waive that defense by engaging in discovery and participating in the litigation." Coffield v. Robinson, 857 S.E.2d 395, 401-02 (W. Va. 2021) (finding a statute of limitations defense is preserved through trial).

"Under West Virginia law, claims for fraud and misrepresentation are governed by a two-year statute of limitation." Yoe v. Branch Banking & Tr. Co., No. 3:13-CV-173, 2014 WL 713283, at *7 (N.D.W. Va. Feb. 25, 2014), aff'd, 585 F. App'x 178 (4th Cir. 2014); W. Va. Code § 55-2-12. Fraud claims are subject to the discovery rule, meaning:

> the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Id. (quoting Trafalgar House Const., Inc. v. ZMM, Inc., 567 S.E.2d 294, 299-300 (W. Va. 2002)). The undisputed facts show that Plaintiffs discovered the alleged fraud on April 3, 2015. Thus, assuming the discovery rule tolled the statute of limitations until then, Plaintiffs needed to bring a claim within two-years of discovering that Pierson was not an owner of BKLP. Because Plaintiffs did not bring suit until December 21, 2021, the fraud claim is barred by the two-year statute of limitations and is **DISMISSED** on this additional ground.

Unjust enrichment claims are subject to a five-year statute of limitation and <u>are not</u> tolled by the discovery rule. HSBC Bank USA, Nat. Ass'n v. Resh, No. 3:12-CV-00668, 2013 WL 312871, at *6-7 (S.D.W. Va. Jan. 25, 2013); Advantage Energy Mktg., Inc. v. Columbia Gas Transmission Corp., No. 2:04-0871, 2009 WL 773273, at *6 (S.D.W. Va. Mar. 17, 2009)(finding "the discovery rule does not apply to Plaintiffs' unjust enrichment claim[s]"); Stand Energy Corp. v. Columbia Gas Transmission Corp., No. 2:04-0867, 2006 WL 162988, at *2 (S.D.W. Va. Jan. 20, 2006)(finding the five-year statute of limitations expired long before the unjust enrichment

14

claim was filed, and that the discovery rule did not apply). Thus, an unjust enrichment claim accrues on the date that the act conferring the unjust benefit was committed. Advantage Energy Mktg., Inc., 2009 WL 773273, at *6 (rejecting a continuing tort theory).

Plaintiffs allege Pierson was an equity owner of BKLP beginning in 2012. See ECF. No. 13, Am. Compl. at ¶ 23. Even assuming that the specific promise of "equity" that Plaintiffs rely upon occurred in October 2014 [see October 31, 2014 email, ECF No. 169-4, p. 10-11], the five-year statute of limitations expired on October 31, 2019. Thus, as with the fraud claim, Plaintiffs' unjust enrichment claim is barred because the lawsuit was not filed until December 2021. Accordingly, Defendants' Motion for Summary Judgment [ECF No. 112] is **GRANTED** on this ground and the fraud claim is **DISMISSED**.

## V. Conclusion

For the foregoing reasons, *Defendants' Motion for Summary Judgment* is **GRANTED** [ECF No. 112]. Accordingly, Plaintiffs' *First Amended Complaint* [ECF No. 13] is **DISMISSED WITH PREJUDICE**. Based on its rulings herein, the Court **DENIES AS MOOT** the remainder of the Defendants' summary judgment arguments and the pending motions in limine [ECF Nos. 130, 132, and 138].

The Clerk is **DIRECTED** to enter judgment in favor of the Defendants, consistent with this Memorandum Opinion and Order, and to **STRIKE** this case from the Court's active docket.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED:**   March 28, 2024

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA